In re CHANTICLEER ASSOCIATES, LTD., Debtor.

LOEWI REALTY CORPORATION, Plaintiff-Appellee,

v.

CHANTICLEER ASSOCIATES, LTD., Defendant-Appellant.

No. 395, Docket 78–5046.

United States Court of Appeals, Second Circuit.

Argued Nov. 27, 1978.

Decided Jan. 23, 1979.

Louis Kruger, New York City (Barbara G. Kaplan, William J. Lowy, Krause, Hirsch & Gross, New York City, of counsel), for defendant-appellant.

Philip Pierce, New York City (Edgar H. Booth, Jack R. Friedman, Booth, Lipton & Lipton, New York City, of counsel), for plaintiff-appellee.

Before LUMBARD, MOORE and GUR-FEIN, Circuit Judges.

GURFEIN, Circuit Judge:

This appeal presents for our review a decision by the United States District Court for the Southern District of New York (Hon. Charles S. Haight, Jr., Judge), reversing two orders issued by Bankruptcy Judge Stanley T. Lesser in the course of a Chapter XII arrangement proceeding. Bankruptcy Act §§ 401–526; 11 U.S.C. §§ 801–926.[1] The question is whether the Bankruptcy Court exceeded its authority when it ordered, without a prior hearing, the stay of a forced sale of the debtor's property, on a mortgage foreclosure in a state court, after default by the debtor under a confirmed and unmodified Plan of Arrangement which provided that precise remedy for the debtor's default. For essentially the reasons

---

1. Hereinafter citations will be made only to the Act.

stated in Judge Haight's opinion below, we agree that the bankruptcy court in this case did exceed its authority. Hence we affirm the district court's order reversing and remanding for further proceedings.

Appellant Chanticleer Associates, Ltd. ("Chanticleer"), the debtor, holds title to an apartment complex located in Dallas, Texas. In the summer of 1976 the property was encumbered by both first and second mortgages. The second mortgage was a lien for unpaid principal of $120,000, due in two equal installments in March 1977 and March 1978. Chanticleer defaulted on the first of these payments, and appellee Loewi Realty Corp. ("Loewi") thereafter purchased the second mortgage at a discount. Loewi immediately began proceedings for a forced sale of the property under Tex.Rev. Civ.Stat.Ann. art. 3810 (Vernon 1966). A receiver was appointed by the Texas court, and the property was posted to be sold on the first Tuesday of July, 1977. Chanticleer filed its Chapter XII petition on the eve of sale, thereby obtaining an automatic stay of the Texas proceedings. *See* Bankruptcy Rule 12–43.

The Bankruptcy Judge convened the creditors with what Judge Haight termed "commendable speed," and by December 22, 1977 a third amended plan of arrangement was confirmed, over Loewi's objection. *See* Bankruptcy Act §§ 461, 468. Provisions were made for all creditors. The Bankruptcy Court reserved jurisdiction pursuant to § 482 of the Act and Rule 12–41(b) of the Rules of Bankruptcy Procedure "until [the] Second Mortgage is paid in full. . . ."

The plan made provision with respect to Loewi requiring full repayment of the second mortgage, with interest. A first payment in the principal amount of $60,000 was due on confirmation, and a second $60,000 payment was due on February 1, 1978, both with interest from March 1, 1977. In addition, Loewi was to be reimbursed for expenditures made for operation and preservation of the apartment complex during the receivership. An installment of $100,000 for reimbursement was to be paid on March 1, 1978, and a second installment of $64,140.31 was due on April 1, 1978, both with interest from May 1, 1977. Finally, Loewi was to be reimbursed for legal fees and other expenses, in an amount to be determined by the Bankruptcy Court. This final payment was also due on April 1, 1978.

This schedule of payments, and other provisions not here relevant, were treated in the plan of arrangement as modifications of Loewi's second mortgage. The plan provided, however, that "[i]f the Second Mortgage, as modified, at any time is in default, the Second Mortgagee may exercise all of its rights and remedies under said Second Mortgage, as modified."

Chanticleer made the first payment to Loewi in January 1978, but it defaulted on the February payment. On February 24, 1978, the Bankruptcy Court entered an order requiring immediate tender of the missed payment by Chanticleer and authorizing Loewi "to treat the second mortgage, as modified by the Third Amended Plan, as being in default, and to exercise any or all of its rights and remedies under said second mortgage, including, without limitation, the right to post and otherwise enforce its rights under Texas law with respect to the sale of the property encumbered by said second mortgage. . . ."

On March 10, 1978, the Bankruptcy Judge denied Chanticleer's application for an extension of time in which to make the payments to Loewi. In so doing, Judge Lesser treated the application as a proposal for a modification of the plan adverse to Loewi and rejected it.[2] Hence Loewi was free to

---

2. The March 10 hearing was actually on Loewi's application to dismiss the reorganization proceeding, pursuant to Bankruptcy Rule 12–41(b), by reason of Chanticleer's default. Counsel for Chanticleer responded by orally requesting "one further modification of the plan concerning the repayment schedules." The Bankruptcy Judge denied the request in the following colloquy:

Mr. Samet [Counsel for Chanticleer]: You are denying my application for leave to file an amended plan?

The Judge: Yes, I am denying it even if it was in writing as it should be, in order to satisfy the rulings [*sic*].

Mr. Samet: Need I submit an order to that effect?

The Judge: About what?

re-activate the Texas receivership and conduct the sale on the next sale date available under Texas law—April 4, 1978.

On April 3, on the eve of sale, the Texas court held a hearing on an action by Chanticleer to restrain the foreclosure. The application was denied on the morning of April 4. At that point, counsel for Chanticleer appeared *ex parte* before Judge Lesser to request the Bankruptcy Court to stay the sale. The judge was apparently informed that Loewi had frustrated Chanticleer's efforts to pay its debt and thus to avoid the sale by demanding expenses that were not properly compensable. Finding that "the Dallas court had refused to fix the correct amount of the Loewi debt or to stay the sale so as to permit the same to be done," Judge Lesser decided to stay the sale on the basis of Chanticleer's oral *ex parte* application before him. The judge communicated the stay to counsel in Dallas by telephone on April 4, and memorialized his action in an order "entered on April 5, 1978 as of 11:00 A.M. on April 4. . . ." The sale, which had already begun on the morning of April 4 before Loewi's counsel learned of the stay, was completed thereafter. Loewi was the only bidder, offering $246,829.98 for the property, which was subject to prior indebtedness totalling over $2,500,000. The decision of Judge Lesser rested on assurances from counsel for the debtor that Chanticleer's general partner, Eastern Development and Investment Corp., would arrange the deposit with a disbursing agent in New York of approximately $275,000 for payment to the second mortgagee. This amount covered the Bankruptcy Court's best estimate at that time of the debt due and owing to Loewi.[3]

> Mr. Samet: That you are denying it or is the record sufficient?
>
> The Judge: Let it be on the record. I am not denying it because it is not properly made and because the debtor is not entitled to any relief here. I am denying it *because it is an adverse modification*.

App. at 135–36 (emphasis added).

3. A separate controversy has arisen with respect to these funds. It appears that Walter J. Cook, a limited partner in Chanticleer and the

After a series of procedural maneuvers by both parties and a hearing on April 14, 1978, Judge Lesser entered an order on June 7, 1978 *confirming* the oral stay, with a scholarly opinion filed thereafter. He relied on the equitable power of the bankruptcy court to stay state court proceedings. Bankruptcy Act §§ 2(a)(15), 414, and on its power under Rule 12–43(d) to "terminate, annul, modify or condition such stay." The Bankruptcy Judge reasoned that "[i]t would be a disservice to secured parties if courts could not reimpose stays after they had once been lifted." He wrote:

> Circumstances change and courts must be able to react. The court's ability to reconcile divergent views in Chapter [XII] proceedings is often accomplished against the backdrop of the power to affect rights to lien enforcement. Until the debtor is finally divested of its property, the court has exclusive jurisdiction if it chooses to exercise it. Until a sale is consummated and the rights of a bona fide purchaser arise, the court must be able to reassert control.

Because of the obstacles Chanticleer had encountered in the Texas proceeding and its apparent new-found ability to satisfy its debt to Loewi, the court determined that it would serve the rehabilitative purpose of Chapter XII to reimpose the stay and give Chanticleer, in the court's words, "one more chance" to save its property.

 We do not disagree with the bankruptcy court's assessment of the equities, nor do we find error in its view of the general powers of the Bankruptcy Court. A bankruptcy court is a court of equity;

controlling shareholder of Eastern, arranged the $275,000 deposit by a series of banking maneuvers that left First City Bank of Dallas, Texas, which supplied most of the funds, holding several dishonored checks drawn on insufficiently funded Eastern accounts. First City Bank has applied for a "return" of $195,000 in the hands of the disbursing agent, and Judge Haight has ordered the bankruptcy court to resolve First City's claim. That order is not before us on this appeal.

and the court's power to preserve its jurisdiction by enjoining proceedings that would remove property from the bankrupt estate is fundamental to the scheme of the Bankruptcy Act. Bankruptcy Act §§ 2(a)(15), 411, 414; *see Pepper v. Litton,* 308 U.S. 295, 303–06, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Continental Illinois Nat'l Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry.,* 294 U.S. 648, 676, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); 6 Collier on Bankruptcy ¶ 3.09[1] (14th ed. 1978); *cf. Baum v. Anderson,* 541 F.2d 1166 (5th Cir. 1976), *cert. denied,* 430 U.S. 932, 97 S.Ct. 1553, 51 L.Ed.2d 776 (1977). In a Chapter XII arrangement this power usually comes into play during the period leading up to the confirmed plan of arrangement to determine "the extent to which the interests of secured creditors may be affected to further the possibilities of rehabilitation of debtors." *In re Colonial Realty Investment Co.,* 516 F.2d 154, 160 (1st Cir. 1975). We do not doubt, however, that it can also be exercised after the plan has been confirmed if the court properly reserved jurisdiction and the circumstances necessitate a stay. Rule 12–43(b), (f); 9 Collier on Bankruptcy, *supra,* § 414, ¶ 3.06 at 804–07; *cf. Prudence-Bonds Corp. v. City Bank Farmers Trust Co.,* 186 F.2d 525, 527 (2d Cir. 1951) (court may take "all proper measures" to "superintend and enforce the execution of the 'plan' ").

■ These general principles, however, are not enough to sustain the action of the Bankruptcy Court. The flaw in the Bankruptcy Court's handling of the stay lies, not in its perception of its powers, but in its manner of exercising them. As Judge Haight correctly noted below, the Bankruptcy Court's powers, however broad, must be exercised in accordance with the procedural requirements of the Bankruptcy Act and Rules. "A bankruptcy court is a court of equity, § 2, 11 U.S.C. § 11, and is guided by equitable doctrines and principles *except in so far as they are inconsistent with the Act.*" *SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293 (1940) (emphasis added). *See Knox v. Lines,* 463 F.2d 561, 563 (9th Cir. 1972). We agree with the District Court that the April 5 stay violated the requirements of notice and of a hearing which must precede any adverse modification of a plan of arrangement. *See Prudence-Bonds Corp. v. City Bank Farmers Trust Co., supra,* 186 F.2d at 527.

The last-minute stay was a "modification" of the confirmed plan of arrangement which was "adverse" to Loewi's interests. The plan expressly obligated Chanticleer to make its second payment to Loewi by February 1, and it expressly empowered Loewi to go forward with foreclosure and sale of the property in the event of default. The April 4 stay effectively denied Loewi its right of foreclosure and aimed to compel it to accept late payment of the mortgage after the default which had triggered its right to foreclose under an unmodified and confirmed Plan of Arrangement. Changing the event of default was a "modification" of the arrangement "materially and adversely affect[ing]" Loewi. Bankruptcy Act § 470; 14A Collier on Bankruptcy, *supra,* ¶ 12–39.02[2] at 12–39–7; *cf. Knight v. Wertheim & Co.,* 158 F.2d 838, 842–44 (2d Cir. 1946), *cert. denied,* 331 U.S. 818, 67 S.Ct. 1307, 91 L.Ed. 1836 (1947). Indeed, the Bankruptcy Judge explicitly recognized that an extension of time for payment would be an adverse modification when he rejected such a proposal during the March 10 hearing.

We hold, accordingly, that a stay of the Texas state proceedings was subject to the procedural requirements for adverse modification of a confirmed plan provided by Bankruptcy Act §§ 469–471 and Rule 12–39. These provisions specify that a proposal for adverse modification must be submitted in writing; that the filing of such a proposal requires the creditors' meeting to be reopened; that creditors must receive at least 10 days' advance notice; and that creditors must be afforded the opportunity to submit written objections to the proposal. None of these procedures was followed. Nor could the subsequent hearing on April 14 cure the failure to abide by legal requirements. Although a court of equity should not be bound unduly by mechanistic adherence to

formality, the requirements of the Bankruptcy Act and Rules are not mere technicalities that may be overlooked or postponed. Rather, they are essential to a fair balancing between debtors' needs and creditors' rights. *Cf. In re Siddell,* 446 F.Supp. 86, 87–88 (W.D.N.Y.1978). When rights become fixed by confirmation of a Plan, the Bankruptcy Court is without power to affect a creditor adversely without due notice and an opportunity to object. The very basis for procedural rules is the protection of substantive rights. Because the mandated procedures were ignored, the manner in which the stay was issued by the Bankruptcy Court went beyond its statutory authority.

The order of the District Court remanding the case to the Bankruptcy Court for further proceedings consistent with its opinion is affirmed.