In re HEALTH SCIENCE PRODUCTS, INC., Debtor.

HEALTH SCIENCE PRODUCTS, INC., Plaintiff,

v.

AmSOUTH BANK, N.A., a corporation, and National Data Payment Systems, Inc., a Corporation, Defendants.

Bankruptcy No. 94–03938–RCF.
Adv. No. 94–00348.

United States Bankruptcy Court, N.D. Alabama, Southern Division.

Oct. 11, 1994.

Robert Rubin, Burr & Forman, Birmingham, AL, for plaintiff/debtor.

David Anderson, Birmingham, AL, for defendants.

### MEMORANDUM OPINION ON HEALTH SCIENCE PRODUCTS' MOTION FOR INJUNCTIVE RELIEF AND TO COMPEL TURNOVER, MOTION TO HOLD DEFENDANTS IN CONTEMPT AND MOTION FOR EMERGENCY EXPEDITED HEARING

BENJAMIN COHEN, Bankruptcy Judge.

This matter came before the Court on the Debtor's Motion for Injunctive Relief and to

Compel Turnover, Motion to Hold Defendants in Contempt and Motion for Emergency Expedited Hearing. An emergency hearing was held on October 11, 1994 on this request. Notice, albeit short, was given to all interested parties. Appearing at the hearing were Mr. Robert B. Rubin and others for the Debtor, Mr. David Anderson and others for the Defendant AmSouth Bank, and by telephone Mr. Grant Stein and others for the Defendant National Data Payment Systems, Inc. (NDPS). Mr. Tom Stewart and Ms. Leslie Klasing also appeared at the request of the Court as representatives for the Birmingham Jefferson Civic Center, a creditor and party to a recent relief from stay hearing and order which may be impacted by this matter. No testimony was offered. All parties presented arguments. There were no objections to the Motion for Emergency Expedited Hearing, which was *de facto* granted by the Court.

### Findings of Fact

The Debtor filed the subject adversary proceeding on October 7, 1994 along with its requests for immediate relief. The Debtor contends that the Defendants improperly debited the Debtor's bank account. The material facts are not disputed. The Debtor manufactures equipment for dentists. A purchase was made by a particular dentist before the bankruptcy was filed. The dentist paid for the equipment with a charge card through which the Defendants paid the Debtor. In accordance with the Debtor's contract with the Defendants, the Defendants were allowed to charge back amounts when appropriate. In the instant case the dentist purchasing the equipment decided, for reasons not made known to the Court, not to pay for the equipment. Under the Debtor's—Defendant's contract the Defendants charged back the Debtor for $23,000.00, the amount representing the cost of the equipment. Because at the time of the charge back the Debtor did not have sufficient funds to pay the charge back, Defendant NDPS, through Defendant AmSouth, debited the Debtor's account in five $2,000.00 increments for a total of $10,-000. The amount of $13,000.00 remains subject to charge back.[1]

During the time of the charge backs, the Debtor wrote checks without the knowledge that the funds to pay these checks had been removed from its account. The checks were, in approximate amounts and numbers, for $6,500.00 to the Birmingham Jefferson Civic Center for telephone service pursuant to this Court's October 3, 1994 order granting a portion of the relief from stay requested by the Civic Center, a number for a combined payroll amount of $3,000.00, another one for $861.00 for a lease, and a final one for $500.00 for a second lease. The Debtor admitted that it does not have sufficient funds to pay the above described checks. Counsel for the Civic Center advised the Court that it is prepared to exercise its option to terminate telephone service, as granted in the Court's order of October 3, 1994, if the Debtor is unable to provide funds to satisfy the $6,500.00 check. The Debtor relies heavily on its telephone service.

The Debtor requests an order of this Court requiring the Defendants to turnover the $10,000.00 debited as charge backs.

### Conclusions of Law

■ In order for the Debtor to prevail in its motion for injunctive relief it must show:

1) a substantial likelihood of success on the merits of the case; 2) that the movant will suffer irreparable harm if the injunction is denied; 3) that the injury to the movant from the denial of the injunctive relief out weighs the damage to the opposing party if it is granted; and 4) that the injunction will not harm the public interest.

*GSW, Inc., v. Long County, Georgia,* 999 F.2d 1508, 1518 (11th Cir.1993) (citing *United States v. Jefferson County,* 720 F.2d 1511 (11th Cir.1983). The Debtor has not satisfied these criteria. And based on the record in this case, the arguments of counsel and the facts stated above and the discussion below, the Court concludes that the Debtor's motions are due to be denied.

---

1. Apparently the equipment is still in the possession of the dentist. Under all circumstances the Debtor should not be deprived of both payment for the equipment and the equipment. The dentist is, however, not a party to the complaint.

■ In terms of its burden as required by the Court of Appeals for the Eleventh Circuit, the Debtor has, as the findings of fact above demonstrate, shown that it will suffer harm if it is unable to maintain its telephone service. Whether this harm is irreparable is debatable. The Court, without certain facts, tends to agree with the Debtor given the obvious financial tight rope this Debtor seems to be walking. With this possibility the Debtor could then demonstrate that the harm to it outweighs the harm to the Defendants. The Debtor has not however, in this Court's opinion, demonstrated that there is a substantial likelihood that it will be successful on the merits. When an evidentiary hearing is held in this matter, the Debtor may ultimately prevail. There may be facts which would change this Court's application of the law. But for now, the Debtor has not met that burden.

This Court finds that there is not a substantial likelihood that the Debtor will prevail on the merits. "Section 542(a) authorizes the bankruptcy court to order turnover of property of the estate, but only to the extent that the court [the debtor] provides adequate protection for those who have an interest in such property." *In re Empire for Him, Inc.*, 1 F.3d 1156, 1160 (11th Cir.1993) (parenthetical added). The Debtor has neither offered adequate protection to the Defendants nor proposed a method for providing adequate protection. The Debtor admits that it has no funds to satisfy the checks written on its account. Whether the Debtor has the ability to provide the Defendants with adequate protection other than replacement funds, is a fact that was not presented to the Court. If presented, this Court will reconsider its denial of the Debtor's request for a turnover.

■ National Data contends that any ruling in the Debtor's favor is tantamount to allowing the Debtor to breach the contract. This Court disagrees. The Debtor may assume or reject the contract. And the purpose of the Bankruptcy Code is to give debtors time in which to make that decision. *See, In re University Medical Center*, 973 F.2d 1065, 1075–76 (3rd Cir.1992). It may be that National Data should force the Debtor's hand and ask this Court to require the Debtor to assume or reject the contract. After such a requirement, both parties will have clearer views of their responsibilities.[2]

---

2. The agreement referred to came into effect prior to bankruptcy and the parties continued to operate under the terms of the contract after the Debtor's petition was filed. In fact, the Debtor was uncertain as to whether or not NDPS and AmSouth were actually aware that the Debtor had filed bankruptcy on the occasions that the postpetition debts were made. The parties were, in essence, conducting business as usual, as if bankruptcy had not intervened.

The contract is executory and subject to assumption by the Debtor pursuant to, and subject to the conditions specified in 11 U.S.C. § 365. Absent a different time period being set by the court upon motion by another party to the contract, the Debtor has until confirmation of its expected plan to either assume or reject the contract. 11 U.S.C. § 365(d)(2). By virtue of that section, the debtor in possession is provided a reasonable time within which to determine whether adoption or rejection of the executory contract would be beneficial to an effective reorganization.

The Defendants contend that the Eleventh Circuit's decision in *In re Thomas B. Hamilton Co., Inc.*, 969 F.2d 1013 (11th Cir.1992) is applicable. In *Hamilton,* however, the Court merely ruled that a credit card merchant agreement of the nature involved in this case is an executory contract which may be assumed pursuant to Section 365, and not a "financial accommodation" contract, which may not. What the Court's decision in *Hamilton* does, however, that is germane to the present discussion, is underline the indispensability of credit card merchant agreements to the survival of the modern merchant. "If these agreements may not be assumed by the trustee following a bankruptcy filing, rehabilitation will be virtually impossible for any merchant who relies heavily on credit card sales." 969 F.2d at 1020.

The Debtor, therefore, presents this court with an anomalous situation. The Debtor asks this court to construe the bankruptcy code to require the Defendants to perform under the contract until the decision is made by the Debtor to either assume or reject the contract, but, in the mean time, to leave the Defendants defenseless against credit card consumers who object to payment because of purported defects in the merchandise purchased from the Debtor. Surely a construction which leads to such an inequitable result is not required.

The Debtor must have the credit card contract and arrangement to survive. Furthermore, the Debtor conducted business as usual under the contract until the debits were made to its account. It is clear that any such arrangement with the Debtor is commercially impracticable and completely unacceptable to the Defendants, absent the charge back portion of the agreement.

A separate Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.[3]

The Debtor cannot, therefore, contend that it operated post petition under the auspices of the contract without being in agreement with the right of NDPS to charge back or that it was not in complicity with NDPS's purported violation of the automatic stay.

The court cannot, based upon the scant information provided at the hearing of this matter, find that the Defendants have willfully violated the automatic stay or that the transfers of the funds from the Debtor's bank account were "not authorized under this title", for purposes of Section 549(a)(2), since it appears that the Debtor knowingly acquiesced in the transfers by performing under the contract and allowing the defendants to do likewise. In fact, until the end of the period during which a credit card purchaser can charge back purchases, funds provisionally credited to a debtor's account may not even be property of the bankruptcy estate. *In re Twenty–Four Hour Nautilus Swim and Fitness Center, Inc.*, 81 B.R. 71 (D.Colo.1987).

Even if the Debtor was otherwise entitled to turnover of the funds pursuant to either Section 549 or Section 542, turnover of the funds cannot be ordered absent adequate protection being provided to the Defendants of their interest in the funds. The Debtor offered no testimony as to how the Defendants' interests in the funds are otherwise adequately protected and did not suggest a means whereby those interests might be adequately protected.

3. The Court has not considered the Motion to Hold the Defendants in Contempt separately from the other motions. Although the Debtor did not withdraw that motion, it represented that it did not desire to force that issue.