In re Rosemary **SHARON**, dba Sharon Janitorial, Debtor.

**TranSouth Financial Corporation, Appellant,**

v.

**Rosemary Sharon, dba Sharon Janitorial, Appellee.**

BAP No. 98–8034.

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Argued Oct. 7, 1998.

Decided June 4, 1999.

J. Ward Holliday, Polk, Scheer, Prober & Holliday, Dallas, TX, argued, for Appellant; Phyllis A. Ulrich, Carlisle, McNellie & Rini, Cleveland, OH, on brief, for Appellant.

Harold Jarnicki, Lebanon, OH, argued and on brief, for Appellee.

Before: BAXTER, LUNDIN, and STOSBERG, Bankruptcy Appellate Panel Judges.

## OPINION

TranSouth Financial Corporation appeals the order of the bankruptcy court that held TranSouth violated the automatic stay and that imposed sanctions under 11 U.S.C. § 362(h). We affirm.

### I. Issues on Appeal[1]

1) Whether the bankruptcy court correctly determined that TranSouth violated the automatic stay by withholding possession of the Chapter 13 Debtor's car after demand and tender of adequate protection by the Debtor.

2) Whether the bankruptcy court abused its discretion by imposing sanctions of $2,122.50 on TranSouth for the stay violation.

1. TranSouth submitted three additional issues: Whether the bankruptcy court abused its discretion by denying TranSouth relief from the automatic stay; whether the bankruptcy court erred in confirming the Debtor's Chapter 13 plan; and whether the bankruptcy court erred in finding that the extended warranty was not an executory contract. Federal Rule of Bankruptcy Procedure 8001(a) requires that a notice of appeal "shall contain the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys[.]" FED.R.BANKR.P. 8001(a) (1996). TranSouth did not name the standing Chapter 13 Trustee as a party to this appeal. The Chapter 13 Trustee filed a motion to dismiss the appeal on the grounds of lack of jurisdiction and mootness due to the dismissal of the Debtor's Chapter 13 case

### II. Jurisdiction and Standard of Review

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction over the appeal of final orders of the bankruptcy court for the Southern District of Ohio pursuant to 28 U.S.C. § 158(c)(1). The bankruptcy court's order sanctioning TranSouth for violating the automatic stay is a final order. *See Javens v. City of Hazel Park (In re Javens)*, 107 F.3d 359 (6th Cir.1997).

The Panel reviews questions of law and of statutory interpretation de novo. *See Hardenberg v. Virginia, Dep't of Motor Vehicles (In re Hardenberg)*, 42 F.3d 986, 988 (6th Cir.1994) (citing *United States v. Brown*, 915 F.2d 219, 223 (6th Cir.1990)). The bankruptcy court's factual findings are reviewed under the clearly erroneous standard. *See* FED. R. BANKR.P. 8013. "The sanction or remedy imposed by the bankruptcy court for violation of the automatic stay is reviewed for abuse of discretion." *United States v. Mathews (In re Mathews)*, 209 B.R. 218, 218 (6th Cir. BAP 1997) (citing *California Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1152 (9th Cir.1996)). "A bankruptcy court's decision with respect to the amount of damages constitutes a factual finding, and, ..., we may not upset such findings unless they are 'clearly

while this appeal was pending. Dismissal of the Debtor's Chapter 13 case rendered moot TranSouth's motion for relief from the automatic stay, confirmation of the Chapter 13 plan and treatment of the extended warranty. The Trustee's motion to dismiss is granted by separate order on those issues. Dismissal of the Chapter 13 case, however, does not moot appeal of the stay violation and sanction issues. *See Javens v. City of Hazel Park (In re Javens)*, 107 F.3d 359, 364 n. 2 (6th Cir.1997) ("We do not think that the dismissal of the case in bankruptcy affects the appealability of the orders recognizing the cities' exemption from the automatic stay. An action under § 362(h) for damages for willful violation of the automatic stay survives dismissal of the case in bankruptcy.") (citing *Price v. Rochford*, 947 F.2d 829, 830–31 (7th Cir.1991)).

erroneous.'" *Archer v. Macomb County Bank,* 853 F.2d 497, 498 (6th Cir.1988).

## III. FACTS

In November 1995, Rosemary Sharon (the "Debtor") purchased a 1995 Mitsubishi 3000 GT automobile. The Debtor made a down payment of $3,450 and financed the balance through a retail installment contract with TranSouth. The Debtor's monthly payments began January 1, 1996. TranSouth perfected its security interest.

The Debtor made the January payment to TranSouth. When the Debtor made the February payment, she was in the process of changing banks. The February check was returned to TranSouth with a notation that the account had been closed. A TranSouth representative contacted the Debtor about the missed payment and told her that TranSouth would not repossess the car if it received two payments-the missed February payment and the March payment. The Debtor tendered a check for two payments to bring her account current. TranSouth repossessed the Debtor's car on March 1, 1996, before the two payment check cleared the Debtor's (new) bank.

The Debtor consulted an attorney. She filed a Chapter 13 petition and plan on March 11, 1996. The plan proposed 60 monthly payments of $1,000 from the Debtor's janitorial business. The plan treated TranSouth as a secured creditor to the extent of the value of the car.

On the same day as the petition, Debtor's counsel contacted TranSouth, advised a Mr. Havenor of the Chapter 13 filing, and requested return of the car. Later that same day, Havenor requested from the Debtor's counsel a copy of the bankruptcy schedules and proof of insurance. These documents, together with the name of the Debtor's insurance agent, were faxed to Havenor that day. The Debtor's counsel contacted Havenor a third time on the petition date to confirm receipt of the documents and to again request that the car be returned. The Debtor's counsel also telephoned TranSouth's counsel in Dallas, Texas and left a message. The next day, Debtor's counsel made two more phone calls to TranSouth's counsel, faxed him a copy of the bankruptcy schedules, and requested again that the car be returned. TranSouth's counsel told Debtor's counsel that TranSouth would not return the car.

On March 15, 1996, the Debtor filed a Motion for Contempt and Sanctions for Violation of the Automatic Stay and a Motion for an Expedited Hearing. The bankruptcy court set a hearing for March 21, 1996. On March 21, 1996, TranSouth filed a Motion for Relief from the Automatic Stay or in the Alternative for Adequate Protection and a brief in opposition to the Debtor's request for sanctions. TranSouth asserted that the Debtor's car was "beyond contemplation of the protection of the Bankruptcy Code" and was not necessary for an effective reorganization because the Debtor could get less expensive transportation. TranSouth contended that its lien was not adequately protected. As a condition for return of the car, TranSouth demanded (more?) proof of insurance and adequate protection payments.

On March 21, 1996, the bankruptcy court ordered return of the car to the Debtor, and set for a later date the Debtor's request for sanctions and TranSouth's motion for relief from the stay. On March 22, 1996, the car was returned.

On June 14, 1996, the bankruptcy court conducted a combined hearing on confirmation, TranSouth's motion for relief from the stay, and the Debtor's request for sanctions. The Debtor was the only witness. She testified that she had operated a janitorial business for nine years and that the business serviced a local college for annual payments that would soon exceed $100,000. The only line of inquiry pursued by TranSouth on cross examination was the number of payments the

Debtor made on the car prior to repossession.

The bankruptcy court held that TranSouth's refusal to turnover the car violated the automatic stay. The bankruptcy court awarded actual damages for costs and attorney fees totaling $2,122.50. *In re Sharon*, 200 B.R. 181 (Bankr.S.D.Ohio 1996).

TranSouth timely appealed.

## IV. DISCUSSION

### A. Withholding Possession of the Debtor's Car After Demand and Tender of Adequate Protection Is the Exercise of Control Over Property of the Estate in Violation of the Automatic Stay.

■ The filing of a Chapter 13 petition gives rise to an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Every interest of the Debtor in "property of the estate" is protected by § 362(a)(3).

■ Possession of the Debtor's car was property of the Chapter 13 estate from the moment of the petition. As the Supreme Court explained in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983):

[Section] 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced.

Section 542(a) is such a provision. It requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee. Given the broad scope of the reorganization estate, property of the debtor repossessed by a secured creditor falls within this rule, and therefore may be drawn into the estate. While there are explicit limitations on the reach of § 542(a), none requires that the debtor hold a possessory interest in the property at the commencement of the reorganization proceedings.

In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings.

*Id.* at 205–07, 103 S.Ct. 2309 (internal citations and footnotes omitted).

TranSouth repossessed the Debtor's car before the Chapter 13 petition, but had not disposed of the car. In *Whiting Pools,* the IRS seized the debtor's property pursuant to a tax levy before the petition but had not sold the property. *Whiting Pools* requires that the right to possess the Debtor's car became property of this Debtor's Chapter 13 estate. *See National City Bank v. Elliott (In re Elliott),* 214 B.R. 148, 151–52 (6th Cir. BAP 1997) (citing *Whiting Pools* for the proposition that a car repossessed before a Chapter 13 petition becomes property of the Chapter 13 estate).

In a footnote in *Whiting Pools,* the Supreme Court recognized that the right of possession becomes property of the bankruptcy estate through the interaction of §§ 541 and 542, subject to one condition precedent and three exceptions:

Section 542 provides *that the property be usable under § 363*, and that turnover is not required in three situations: when the property is of inconsequential value or benefit to the estate, § 542(a), when the holder of the property has transferred it in good faith without knowledge of the petition, § 542(c), or when the transfer of the property is automatic to pay a life insurance premium, § 542(d).

*Whiting Pools,* 462 U.S. at 206 n. 12, 103 S.Ct. 2309 (emphasis added). Section 1303 of the Code gives a Chapter 13 debtor "exclusive of the trustee, the rights and powers of a trustee under sections 363(b),

363(d), 363(e), 363(f) and 363(*l* ).” 11 U.S.C. § 1303. Thus in this Chapter 13 case, § 1303 supplies the “usable under § 363” predicate to the Supreme Court's reasoning in *Whiting Pools*.

Applying *Whiting Pools*, possession of the Debtor's car was part of the bundle of rights that became “property of the estate” at the Chapter 13 petition. Once defined as “property of the estate,” the statutory consequence under § 362(a) is application of the automatic stay. The Debtor's right to possession of the car was protected by the automatic stay.

■ Withholding possession of property of the bankruptcy estate constitutes “the exercise [of] control over property of the estate” for purposes of the automatic stay in 11 U.S.C. § 362(a)(3). The phrase “to exercise control over property of the estate” was added to § 362(a)(3) in 1984. Prior to 1984, § 362(a)(3) simply stayed “any act to obtain possession of property of the estate or of property from the estate.” The 1984 amendment broadened the scope of § 362(a)(3). *See California Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1151 (9th Cir.1996).

The Sixth Circuit analyzed § 362(a)(3) in *Javens* and concluded that one explanation for the language change in 1984 was to clarify that the stay reached property of the estate in the possession of others:

> The fact that 'to obtain possession' was amended to 'to obtain possession ... or to exercise control' hints [ ] that this kind of 'control' might be a broadening of the concept of possession.... It could also have been intended to make clear that (a)(3) applied to property of the estate that was not in the possession of the debtor.

*Javens*, 107 F.3d at 368.

Withholding possession of property from a bankruptcy estate is the essence of “exercising control” over possession. TranSouth exercised control over the Debtor's car and over the Debtor's right to possess that car by withholding possession and refusing use of the car after demand and tender of adequate protection by the Debtor. This exercise of control violated the stay in § 362(a)(3). *Del Mission Ltd.*, 98 F.3d at 1151 (“the knowing retention of estate property violates the automatic stay of § 362(a)(3).... [T]he onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor.”); *Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir.1989) (“[T]he duty [to turn over property of the estate] arises upon the filing of the bankruptcy petition. The failure to fulfill this duty, regardless of whether the original seizure was lawful, constitutes a prohibited attempt to 'exercise control over the property of the estate' in violation of the automatic stay.”); *Expeditors Int'l of Washington, Inc. v. Colortran, Inc. (In re Colortran, Inc.)*, 210 B.R. 823 (9th Cir. BAP 1997) (“A creditor who fails to return the estate's property after it knows of the debtor's bankruptcy is subject to sanction for willful violation of the automatic stay.”) (citation omitted), *aff'd. in part, rev'd on other grounds without reported op.*, 165 F.3d 35 (9th Cir.1998) (text available at 1998 WL 792307); *GMAC v. Ryan,* 183 B.R. 288, 289 (M.D.Fla.1995) (“A creditor's failure to voluntarily turn over property taken lawfully prepetition, when so requested by the debtor postpetition, is a violation of the automatic stay.”); *In re Cepero*, 226 B.R. 595, 598 (Bankr.S.D.Ohio 1998) (“Despite the lawful prepetition repossession, [creditor] violated the automatic stay of § 362(a)(3) by maintaining possession of the Accord after receiving notice of the bankruptcy filing.”); *In re Berscheit*, 223 B.R. 579, 581 (Bankr.D.Wyo.1998) (“The language of § 542(a) is mandatory and requires that a creditor in possession of estate property that the trustee may use under section 363, shall turn that property over to the trustee.... The effect of § 362(a)(3) requires that the creditor either turn over the property or seek relief from the court.”).

■ There is no "exception" to § 362(a)(3) that excuses TranSouth's refusal to deliver possession of the Debtor's car based on TranSouth's subjective opinion that adequate protection offered by the Debtor was not "adequate." *See In re Zaber,* 223 B.R. 102, 106–07 (Bankr. N.D.Tex.1998). Trapped by *Whiting Pools* and the plain language of § 362(a)(3), TranSouth rests the defense of its decision to withhold possession of the Debtor's car on the proposition that its right to "adequate protection" trumps the Debtor's right of possession. Corollary to this argument, TranSouth contends that withholding possession could not violate the stay because a lien creditor's right to adequate protection includes the right to refuse any tender of adequate protection until a court orders turnover.

Some courts have embraced one or both of TranSouth's arguments. *See Nash v. Ford Motor Credit Co. (In re Nash),* 228 B.R. 669, 673–74 (Bankr.N.D.Ill.1999); *Spears v. Ford Motor Credit Co. (In re Spears),* 223 B.R. 159, 166 (Bankr.N.D.Ill. 1998); *In re Fitch,* 217 B.R. 286, 290–91 (Bankr.S.D.Cal.1998); *Massey v. Chrysler Fin. Corp. (In re Massey),* 210 B.R. 693, 696 (Bankr.D.Md.1997); *Brown v. Joe Addison, Inc. (In re Brown),* 210 B.R. 878, 883 (Bankr.S.D.Ga.1997); *In re Young,* 193 B.R. 620, 624 (Bankr.D.D.C.1996). The Panel concludes that TranSouth's position is not supported by the Bankruptcy Code, was rejected in large part by the Supreme Court in *Whiting Pools* and is contrary to the weight of authority, including decisions by the Courts of Appeals for the Eighth and Ninth Circuits.

Nothing in § 362 itself suggests the "adequate protection" exception to the automatic stay argued by TranSouth. As demonstrated above, the presence of "property of the estate" triggers the proscription in § 362(a)(3). There is no "exception" to property of the estate for property with respect to which a creditor claims a right of "adequate protection." To the contrary, as recognized by the Supreme Court in

*Whiting Pools,* §§ 541 and 542 of the Code work together to draw back into the estate a right of possession that is claimed by a lien creditor pursuant to a prepetition seizure; the Code then substitutes "adequate protection" for possession as one of the lien creditor's rights in the bankruptcy case. As explained by the Supreme Court:

When property seized prior to the filing of a petition is drawn into the Chapter 11 reorganization estate, the Service's tax lien is not dissolved; nor is its status as a secured creditor destroyed. The IRS, under § 363(e), remains entitled to adequate protection for its interests, to other rights enjoyed by secured creditors, and to the specific privileges accorded tax collectors. *Section 542(a) simply requires the Service to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to reorganize.*

*Whiting Pools,* 462 U.S. at 211–12, 103 S.Ct. 2309 (emphasis added).

■ TranSouth's argument here is exactly the argument rejected by the Supreme Court in *Whiting Pools.* The "status quo" defined by nonbankruptcy law that TranSouth and the dissent herein erect as a barricade to the automatic stay is changed by the Bankruptcy Code. TranSouth's "adequate protection" right does not defeat the statutory obligation in § 542(a) that TranSouth "shall deliver" possession of property of the estate. As the Supreme Court stated, TranSouth cannot "withhold[ ] the seized property" but must instead "seek protection of its interest," including its statutory right to adequate protection, "according to the congressionally established bankruptcy procedures." *Id.*

■ The "congressionally established bankruptcy procedures" for asserting a lien creditor's right to adequate protection *do not* include the unilateral refusal to deliver possession. Adequate

protection may be required under at least three sections of the Bankruptcy Code—§§ 362, 363 and 364. *See* 11 U.S.C. § 361. Under § 362(d), continuation of the automatic stay may be conditioned by the bankruptcy court on the provision of adequate protection, but the procedural prerequisite is that the lien creditor must first "request" relief from the stay by motion to the bankruptcy court under Bankruptcy Rule 4001(a). Section 362(d) is not an "exception" to the automatic stay; it is the congressionally prescribed method for a creditor to get relief from the stay. TranSouth's choice to first violate the stay and then to seek relief from the stay under § 362(d) was the assumption of a known risk that is not excused by the possibility that the bankruptcy court might subsequently determine that TranSouth was entitled to adequate protection.

■ Under § 363, a debtor or trustee is authorized to use (noncash) property of a bankruptcy estate without first obtaining a court order and adequate protection interrupts that use only after a lien creditor acts as required by § 363(e):

> Notwithstanding any other provision of this section, at any time, on request of any entity that has an interest in property used, sold, or leased, or proposed to be used sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e). *See also* FED. R. BANKR.P. 4001(a). " 'The Bankruptcy Code nowhere puts the responsibility on the debtor to initiate consideration of adequate protection of a creditor's noncash collateral.' " *In re Robinson*, 225 B.R. 228, 233 (Bankr.N.D.Okla.1998) (quoting *First*

*State Bank v. Advisory Info. & Management Sys., Inc. (In re Advisory Info. & Management Sys., Inc.)*, 50 B.R. 627, 630 (Bankr.M.D.Tenn.1985)). Entitlement to adequate protection in the first instance with respect to all property of the estate other than cash collateral is triggered by a creditor's request to the bankruptcy court and " 'if you don't ask for it, you won't get it.' " *Id.* (quoting *In re Kain*, 86 B.R. 506, 512 (Bankr.W.D.Mich.1988)).

When Congress intended "adequate protection" to limit a debtor's right to possession or use of property of the estate, it unmistakably said so. Section 363(c)(2) of the Code defines "cash collateral" as a special category of estate property that a debtor or trustee cannot use without first getting the lien creditor's permission or a court order allowing use and providing adequate protection.[2] In other words, § 363(c)(2) trumps the Chapter 13 debtor's right to use estate property with a lien holder's right to adequate protection, but only with respect to "cash collateral." Because of the cross-reference in § 542(a) to § 363, TranSouth's argument that it could withhold possession until the bankruptcy court ordered adequate protection might have statutory support if the property the Debtor sought to use was cash collateral. That possession of the Debtor's car is not "cash collateral" reveals a fundamental fallacy in TranSouth's position: the Bankruptcy Code does not elevate TranSouth's adequate protection right above the Chapter 13 debtor's right to possession and use of a car. *Compare* 11 U.S.C. § 542(b) (excusing delivery of money owed to an estate when the creditor has a right of setoff under § 553). *See also* 11 U.S.C. § 364 (requiring bankruptcy court to consider adequate protection of a lien holder whose position will be "primed" by a bor-

---

2. Section 363(c)(2) provides:
The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
   (A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 362(c)(2).

rowing order without regard to request by the lien holder).

This outcome is consistent with our view that a Chapter 13 debtor's right to possession and use of her car is not dependent on the subjective judgment of a creditor whether the car is "too expensive" or has too few seats. That TranSouth argues the kind of car the Debtor owns affects whether withholding possession violated the automatic stay speaks volumes to the wisdom of a statute that places the risk of withholding possession squarely on the lien creditor. Sections 362, 363 and 542 assign to the bankruptcy court, not to creditors, the prerogative to make judgments whether a particular car should continue to be used by a Chapter 13 debtor, will remain protected by the automatic stay and whether an offer of adequate protection is sufficient to continue possession and use by the debtor. Under the Bankruptcy Code, the protection of the automatic stay is not limited by the subjective beliefs of lien creditors.

When a creditor fears that "adequate protection" is in immediate jeopardy if possession is delivered consistent with § 542(a), the "congressionally established bankruptcy procedure" is expedited relief under § 362(f):

Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer damage before there is an opportunity for notice and a hearing under subsection (d) or (e) this section.

11 U.S.C. § 362(f). See Colortran, 210 B.R. at 827–28 ("If the creditor is concerned that its interest will be irreparably harmed if the property is turned over before the motion for relief from stay can be heard it may request an emergency hearing under § 362(f)."). The Bankruptcy Code does not offer TranSouth the option of simply refusing possession when it fears inadequate protection of its lien.

The Courts of Appeals for the Eighth and Ninth Circuits have rejected Tran-South's argument that a creditor cannot violate the automatic stay by withholding possession of estate property until the debtor obtains a court order for adequate protection and turnover:

11 U.S.C. § 542(a) provides that an entity in possession of estate property "shall" deliver such property to the trustee. This is a mandatory duty arising upon the filing of the bankruptcy petition. Knaus v. Concordia Lumber Co. (In re Knaus), 889 F.2d 773, 775 (8th Cir.1989). Thus, "[w]ithout doubt, 'a creditor's knowing retention of property of the estate constitutes a violation of' § 362(a)(3)." Chugach, 23 F.3d at 246 (quoting Abrams, 127 B.R. at 242); accord Knaus, 889 F.2d at 775 ("The failure to [turn over], regardless of whether the original seizure was lawful, constitutes a prohibited attempt to 'exercise control over the property of the estate' in violation of the automatic stay."); Carlsen v. IRS (In re Carlsen), 63 B.R. 706, 711 (Bankr.C.D.Cal.1986) (failure of IRS to return funds received pursuant to a levy after receiving notice violated automatic stay).

These cases emphasize the underlying purpose of the automatic stay, which is to alleviate the financial strains on the debtor. See, e.g., Knaus, 889 F.2d at 775; see also Utah State Credit Union v. Skinner (In re Skinner), 90 B.R. 470 (D.Utah 1988), aff'd, 917 F.2d 444 (10th Cir.1990). To effectuate the purpose of the automatic stay, the onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor. [Abrams v. Southwest Leasing & Rental, Inc. (In re Abrams), 127 B.R. 239, 243 (9th Cir. BAP 1991)].

[I]f persons who could make no substantial adverse claim to a debtor's property in their possession could,

without cost to themselves, compel the debtor or his trustee to bring suit as a prerequisite to returning the property, the powers of a bankruptcy court and its officers to collect the estate for the benefit of creditors would be vastly reduced.

[*Knaus v. Concordia Lumber Co. (In re Knaus* ), 889 F.2d 773, 775 (8th Cir. 1989) ]. . . . "[T]he case law and the legislative history of § 362 indicate that Congress did not intend to place the burden on the bankruptcy estate to absorb the expense of potentially multiple turnover actions, at least not without providing a means to recover damages sustained as a consequence thereof." *Abrams*, 127 B.R. at 243.

*Del Mission Ltd.*, 98 F.3d at 1151–52.

More recently, the Court of Appeals for the Ninth Circuit affirmed in pertinent part the BAP's decision in *Colortran*. In *Colortran*, the Ninth Circuit BAP observed:

A creditor who possesses property of the estate on the date the bankruptcy petition is filed has an obligation to turn that property over to the debtor or to the trustee. . . . [T]he onus to return estate property is place upon the possessor. . . .

. . . . A creditor who requires possession in order to achieve or maintain perfection has the right to file a motion for relief from the stay and request adequate protection such that its lien rights are preserved. However, the creditor must tender the goods or face sanctions for violation of the stay. The creditor has a right to and may request terms of adequate protection while simultaneously returning the goods. However, while the creditor may suggest terms of adequate protection, it may not unilaterally condition the return of the property on its own determination of adequate protection. If the creditor and the debtor cannot agree on what constitutes adequate protection, the creditor can request a hearing, with the debtor having the burden of proving that the creditor's rights will be adequately protected. If the creditor is concerned that its interest will be irreparably harmed if the property is turned over before the motion for relief form stay can be heard, it may request an emergency hearing under § 362(f). In all cases, however, any prerequisite to turnover is determined by the bankruptcy court, not by the creditor.

*Colortran*, 210 B.R. at 827–28 (internal quotations and citations omitted).

This Panel aligns itself with the many courts that have held that a creditor violates the automatic stay by withholding possession of a Chapter 13 debtor's car after demand and tender of adequate protection. *See Knaus*, 889 F.2d at 774–75; *Colortran*, 210 B.R. at 827–28; *Abrams*, 127 B.R. at 243; *Ryan*, 183 B.R. at 289; *Carr v. Security Savings & Loan Ass'n*, 130 B.R. 434 (D.N.J.1991); *Cepero*, 226 B.R. at 598; *Berscheit*, 223 B.R. at 581; *Zaber*, 223 B.R. at 105–07; *In re Coats*, 168 B.R. 159 (Bankr.S.D.Tex.1993); *In re Holman*, 92 B.R. 764 (Bankr.S.D.Ohio 1988); *In re Carlsen*, 63 B.R. 706 (Bankr. C.D.Cal.1986).

## B. The Debtor Was Entitled To Possession Of The Car.

TranSouth argues in the alternative that if it had an obligation to turn over the car without a court order, its obligation was to give the car to the Chapter 13 Trustee, not to the Debtor. TranSouth bases this argument on the phrase in § 542(a) that an entity in possession of estate property shall deliver that property "to the trustee." 11 U.S.C. § 542(a).

`This argument is somewhat disingenuous. At no point since the moment of filing of this Chapter 13 case has TranSouth offered to deliver possession of the Debtor's car to anyone-not to the Trustee or to the Debtor. TranSouth never tendered possession to the Chapter 13 Trustee. `TranSouth has never explained its

refusal·to deliver possession of the car in terms of "to whom." Rather, TranSouth has consistently asserted its exemption from § 362(a)(3) in terms of its right to unilaterally determine whether the protection offered by the Debtor was adequate.

More importantly, TranSouth did not appeal. the bankruptcy court's order for turnover of the car to the Debtor. This appeal challenges only the bankruptcy court's order that TranSouth violated the automatic stay and must pay sanctions. Any procedural defect in the bankruptcy court's turnover order, including those suggested for the first time by the dissent herein, must await review on the facts of another case.

■ There is no failure of standing on this appeal. As discussed below, under 11 U.S.C. § 363(h) "an individual injured by any willful violation of a stay" can recover damages. The Chapter 13 Debtor is certainly "an individual injured" by TranSouth's withholding of possession of the Debtor's car. The Debtor has standing to seek sanctions for TranSouth's violation of the stay.

At another level, in a Chapter 13 case, the Bankruptcy Code is explicit about the right of possession of property of the estate. Section 1306(b) states: "Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." 11 U.S.C. § 1306(b). As demonstrated above, § 1303 assigns to the Chapter 13 debtor, "exclusive of the trustee," many of the rights and powers of a trustee to use property of the estate under § 363. Section 1303 thus substitutes "the debtor" for "the trustee" with respect to the rights and powers cross referenced in § 1303. To the extent a Chapter 13 debtor can then use property of the estate under § 363, the debtor succeeds to the mandate in § 542(a) that compels delivery of property that is usable under § 363. TranSouth's alternative reading produces an absurd result: § 542(a) would mandate delivery of a debtor's car to a Chapter 13

trustee who is prohibitive by § 1306(b) to possess the car and is prohibited by § 1303 to use, sell or lease the car. More reasonably, §§ 1303, 363, 542 and 362 work together to require and enforce the delivery of possession of the car to the Debtor in this Chapter 13 case.

## C. The Bankruptcy Court Correctly Applied 11 U.S.C. § 362(h) and Did Not Abuse Its Discretion in Awarding Sanctions.

■ Section 362(h) provides:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h). The bankruptcy court appropriately assigned to the Debtor the burden to prove entitlement to damages.

■ The bankruptcy court held that a "willful violation" did not require proof of a specific intent to violate the stay, but rather an intentional violation by a party aware of the bankruptcy filing. The only damages awarded by the bankruptcy court were attorney fees of $2,122.50. The court found this award justified because TranSouth was aware of the bankruptcy filing and with studied, informed intent withheld possession of the Debtor's car.

■ The bankruptcy court correctly interpreted § 362(h). A violation of the automatic stay can be willful when the creditor knew of the stay and violated the stay by an intentional act. *See Johnston Evtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir.1993); *Lansdale Family Restaurants, Inc. v. Weis Food Service (In re Lansdale Family Restaurants, Inc.)*, 977 F.2d 826, 829 (3d Cir.1992); *Crysen/Montenay Energy Co.*, 902 F.2d at 1105; *A & J Auto Sales, Inc. v. United States (In re A & J Auto Sales, Inc.)*, 223 B.R. 839 (D.N.H.1998). TranSouth's belief that withholding possession would not violate the stay does not preclude the bank-

ruptcy court's finding that the intentional act of withholding possession was "willful." *See Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098 (2d Cir.1990); *Cuffee v. Atlantic Business & Community Dev. Corp. (In re Atlantic Business & Community Corp.)*, 901 F.2d 325 (3d Cir. 1990). The Supreme Court's recent discussion of "willful" in § 523(a)(6) in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 976–78, 140 L.Ed.2d 90 (1998), does not change our conclusion that the bankruptcy court correctly interpreted "willful" for purposes of § 362(h). *See Diviney v. NationsBank of Texas, N.A. (In re Diviney)*, 225 B.R. 762 (10th Cir. BAP 1998) ("We think the narrower *Geiger* standard should not be applied to § 362(h) because a party who willfully violates the automatic stay had the opportunity to seek permission from the bankruptcy court before taking actions that might violate the automatic stay, while determinations of 'willful and malicious injury' under § 523(a)(6) are made only after the debtor has acted without the opportunity to obtain a protective ruling from a court before acting."); *In re Robinson*, 228 B.R. 75, 79 n. 5 (Bankr. E.D.N.Y.1998) ("'Willful' in section 523(a)(6), and interpreted in *Geiger*, involves an exception to discharge. Exceptions to discharge are to be narrowly construed. A broader construction of "willful" as used in that section would have been incompatible with that policy. Section 362(h), on the other hand, should be liberally construed to bolster the protections of the automatic stay. Section 362(h) provides a remedy to individual debtors harmed by a willful violation of the automatic stay. If section 362(h) were limited to violators who had specific intent to violate the stay, the deterrent effect of the damages remedy, and the relief it affords wronged debtors, would be compromised inappropriately."); *In re Hill*, 222 B.R. 119, 123 (Bankr.N.D.Ohio 1998).

■ TranSouth and its counsel were aware on the petition date of the Debtor's demand for return of the car. Proof of insurance was provided. The bankruptcy schedules listed TranSouth and the plan treated TranSouth as a secured creditor. Repeated requests for turnover were refused by TranSouth. Ten days after the petition, on the Debtor's motion, the bankruptcy court ordered TranSouth to return the car. On these facts the bankruptcy court did not err in concluding that TranSouth willfully violated the automatic stay.

■ The bankruptcy court awarded actual damages under § 362(h) for attorney fees for services by Debtor's counsel to obtain possession of the car, including the turnover motion and the stay violation and sanctions motion. These services are clearly set forth in Exhibit A to the bankruptcy court's decision. These services were necessitated by TranSouth's refusal to deliver possession in violation of the automatic stay. The bankruptcy court declined to impose punitive damages. The bankruptcy court did not abuse its discretion in awarding attorney fees as damages.

## V. Conclusion

The bankruptcy court's decision that TranSouth violated the automatic stay and awarding damages is **AFFIRMED.**

STOSBERG, dissenting.

The panel's automatic turnover approach sanctions a procedure used to bludgeon creditors by employing the petition as a device to recover a repossessed vehicle without a hearing. A debtor can then dismiss the petition by simply not filing a plan, which is not required for 15 days after the case is filed. This procedure does not preserve the status quo—it alters the rights of the parties without the opportunity for a hearing. The panel's strained interpretation of the statutes suggests that "rights" in the property belong to the debtor. Any rights to property lawfully repossessed prepetition belong instead to the creditor.

This turnover procedure raises the troubling and fundamental question of standing. Under section 1306, the filing of a chapter 13 petition creates an estate. Upon the filing, the trustee owns all of the debtor's property and the debtor owns nothing until confirmation when, pursuant to 11 U.S.C. § 1327(b), the property vests in the debtor. Chapter 13 is distinguishable from chapter 11 in that chapter 13 does not confer upon a debtor the rights, powers and duties of a trustee under the avoidance and recovery provisions of the Code. *Compare* 11 U.S.C. I 1107 & 1303. More importantly, section 542(a) provides that the entity in possession of property of the estate *shall* turn it over *to the trustee,* and that *the trustee* may use, sell, or lease the property under section 363. I would overturn the contempt sanctions on grounds of standing alone.

Furthermore, the procedure utilized by the Debtor to obtain possession of the vehicle was fatally flawed. The debtor requested turnover of the car via motion. Bankruptcy Rule 7001 sets forth a procedure for resolving turnover disputes which affords each party a fair opportunity to present its respective position. *In re Estes,* 185 B.R. 745, 746 (Bankr.W.D.Ky.1995)(quoting *Carter).* The bankruptcy rules mandate that the court await the filing of an adversary proceeding before determining whether to allow turnover. *Id.* Accord, *In re Wheeler Technology, Inc.,* 139 B.R. 235 (9th Cir. BAP 1992); *In re Perkins,* 902 F.2d 1254 (7th Cir.1990); *In re Chanticleer Assoc., Ltd.,* 592 F.2d 70 (2d Cir.1979); *In re Ace Industries, Inc.,* 65 B.R. 199 (Bankr. W.D.Mich.1986). An adversary proceeding serves simultaneously the interests of efficiency and due process. The case of *In re Jackson,* 142 B.R. 172 (Bankr.N.D.Ohio 1992), demonstrates the effectiveness of employing a complaint plus temporary injunctive relief.

Moreover, Transouth was clearly entitled to adequate protection payments on the vehicle. Transouth maintained that it was entitled to retain possession of the vehicle until resolution of the adequate protection question. This position is meticulously laid out in the case of *In re Young,* 193 B.R. 620 (Bankr.D.Dist.Col. 1996). As the *Young* court correctly notes, many courts conclude that the bankruptcy filing "freezes" the status quo and the creditor does not violate the stay by refusing to return property lawfully repossessed prepetition. *Id.* at 623; *See also, In re Briggs,* 143 B.R. 438, 448 n. 15 (Bankr.E.D.Mich.1992); and *In re Troy Industrial Catering Serv.,* 2 B.R. 521 (Bankr.E.D.Mich.1980). By forcing immediate turnover of the collateral without adequate protection, the creditor loses the costs of repossession and the prospects of obtaining some type of payments toward depreciating collateral, upon which the creditor will not receive any further payments until after confirmation. *Id.* at 627.

The courts adopting this approach rely upon *Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), for the proposition that the rights of creditors must be adequately protected before requiring turnover of the collateral. *See Richardson,* 135 B.R. 256, 259 (Bankr. E.D.Tex.1992). In other words, adequate protection is a prerequisite to turnover of the collateral. *See, e.g., In re Empire for Him, Inc.,* 1 F.3d 1156 (11th Cir.1993); *In re Swedeland Development Group, Inc.,* 16 F.3d 552 (3rd Cir.1994); *In re Crowe,* 160 B.R. 299 (Bankr.N.D.Tex.1993); *In re Deiss,* 166 B.R. 92 (Bankr.S.D.Tex.1994); *In re Health Science Products, Inc.,* 181 B.R. 121 (Bankr.N.D.Ala.1994); *Gold Leaf Corp. v. Hamilton Projects, Inc.,* 78 B.R. 1018 (Bankr.N.D.Fla.1987); *In re Williams,* 6 B.R. 789, 792 (Bankr. E.D.Mich.1980); and *In re Hinckley,* 40 B.R. 679, 681 (Bankr.D.Utah 1984). By retaining seized property and preserving the status quo pending the adequate protection determination, a creditor is merely "complying with the spirit of the 362 freeze." *Richardson,* 135 B.R. at 259.

Transouth did not violate 11 U.S.C. § 362 but merely maintained the status quo as of the filing date by retaining possession of the vehicle pending the adequate protection determination. The bankruptcy court misapplied the language of § 362(a)(3). *In re Richardson,* 135 B.R. 256, 258 (Bankr.E.D.Tex.1992). Under section 362, the filing of a petition operates as a stay of any creditor's collection attempts. *Id.* Should the creditor affirmatively act to collect after the imposition of the stay, and thereby "exercise control" over property of the estate, the creditor is subject to sanctions pursuant to § 362(h). *Id.* at 259. "However, this provision for creditors who affirmatively act in violation of the stay post-petition can not be extrapolated to punish creditors who, while legally seizing the property of the estate prepetition, failed to return this property immediately to the debtor post-petition." *Id.* In maintaining the property in the same status it enjoyed just prior to the filing, the creditor is merely "complying with the spirit of the § 362 freeze." *Id.*

Any "exercise of control" over property of the estate, to be sanctionable, must occur post filing and must involve an affirmative act on the part of the creditor beyond maintaining the status quo. *See Id. See also, In re Young,* 193 B.R. 620, 621 (Bankr.D.C.1996). Where the creditor has not taken any action to sell the property, the Debtor's rights in the property have not changed from the date of the filing. *Id.* Section 542 is not self-executing; rather, the creditor may hold the property pending the court's resolution of the adequate protection question. *Young,* 193 B.R. at 622. *Accord, In re Fitch,* 217 B.R. 286, 290 (Bankr.S.D.Cal.1998). This freezing of the status quo is intended to protect the creditor from the harm that adequate protection is designed to avoid if the property is turned over before the debtor proves that the creditor is being provided the adequate protection to which it is entitled under the Code. *Id.* at 625.

Bringing this discussion full-circle, the concept of maintaining the status quo, effectuated by the creditor's retention of the vehicle pending the court's resolution of adequate protection, is in accord with the purpose of Bankruptcy Rule 7001, which provides for the filing of an adversary proceeding to recover property of the estate. By invoking the procedural requirements of Bankruptcy Rule 7001, a debtor is able to preserve the status quo, by requesting a temporary restraining order against the creditor to prevent any further affirmative act on the part of the creditor to sell the collateral. This approach likewise affords the creditor due process in providing for a 20 day answer period and the opportunity for a full hearing to determine the debtor's entitlement to permanent relief and the creditor's concomitant entitlement to adequate protection of its interest in the collateral.

Technicalities notwithstanding, I feel constrained to briefly comment on the panel's characterization of this case, depicting it as a routine chapter 13. At the time of the petition, the Debtor had two children and was pregnant, yet the luxury vehicle she recovered had only two seats! Moreover, the $984.98 monthly payment on the car exceeded her rent by $350.00. The trustee should have intervened and recommended surrender of this vehicle, instead of assisting the Debtor in a bad faith endeavor which ended rapidly after confirmation when she defaulted and dismissal followed.

I respectfully dissent.