**In re James H. KARIS, and Nancy A. Karis, Debtors.**

**Bankruptcy No. 96–24595–12.**

United States Bankruptcy Court,
W.D. Wisconsin,
Eau Claire Division.

March 20, 1997.

---

Mark Bromley, Lancaster, WI, for Debtors.

Richard D. Humphrey, Assistant U.S. Attorney, Madison, WI, for Farm Service Agency.

### MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy Judge.

Here is the story of a herd of cows whose happy days in the fields of the Western District of Wisconsin ended in a mad dash toward market and McDonald's. The story presents a different twist to a familiar question—where did all the dogies go? In many instances, the creditors marvel at the disappearance of the debtor's cattle.[1] In this case, however, it is the debtors who complain of the cows' hasty departure. These complaints have crystallized into the motion presently before the Court, in which the debtors seek to hold Farm Service Agency ("FSA") in contempt.

The debtors are represented by Mark Bromley, while FSA is represented by Assistant U.S. Attorney Richard D. Humphrey. The debtors contend that FSA willfully violated the automatic stay provisions of 11 U.S.C. § 362 by proceeding with an auction of the debtors' cows after the bankruptcy petition was filed in this case. While the timing of certain events is critical to the outcome of this dispute, the facts are relatively simple. These facts are as follows:

1. On September 13, 1996, FSA obtained a foreclosure and replevin judgment against the debtors.

2. On November 6, 1996, at approximately 9:20 a.m., Mr. Bromley contacted Mr. Humphrey and indicated that the debtors intended to file bankruptcy that day.

3. Earlier that same morning, however, agents of FSA had been to the debtors' farm and picked up the cattle in question.

4. At 11:51 a.m. on November 6, 1996, the debtors filed bankruptcy.

5. At approximately 1:40 p.m., the debtors verbally informed FSA that they had filed bankruptcy. They did not provide any documentation of the filing to FSA, nor did they tell FSA the case number.

6. The cattle were sold at approximately 3:00 p.m.

Notwithstanding the fact that they did not provide FSA with anything other than their verbal assertion that they had filed bankruptcy, the debtors allege that FSA "willfully" violated the automatic stay. If true, the debtors might be entitled to damages under 11 U.S.C. § 362(h), which provides that "any individual injured by any willful violation of a stay provided by this section shall recover actual damages." In support of their contention, the debtors argue that the cows belonged to them until they were sold and the proceeds were credited to their outstanding debt. Neither of these things happened until after the bankruptcy filing. As a result, the debtors believe that FSA violated several subsections of § 362 by selling the cattle postpetition.

As a preliminary matter, it is questionable whether the purported violation of the stay could be characterized as willful. It is true that the filing of the petition triggers the automatic stay, notwithstanding the creditor's lack of actual notice. *In re Sumpter*, 171 B.R. 835 (Bankr.N.D.Ill.1994). Clearly, however, the stay does not take effect until the petition is actually filed. *In re Wheeler*, 5 B.R. 600 (Bankr.N.D.Ga.1980). As a result, the telephone call from the debtors' attorney could not act as "notice" of the automatic stay because no petition had been filed. Once the debtors did file the petition, they informed FSA of that fact but did not give FSA any further information.

The question is whether this is sufficient to hold a creditor liable under

---

[1]. Indeed, given the facts of the farm-related cases heard in this division over the past ten years, it is possible to wonder if a sort of "bovine rapture" has not been quietly taking place across the north woods of Wisconsin.

§ 362(h). A creditor does not "willfully" violate the stay unless the creditor received "adequate notice" of the filing and then intentionally committed an act which violates § 362. *In re Sculky*, 182 B.R. 706 (Bankr. E.D.Pa.1995). What constitutes "adequate notice" of course depends upon the facts of the particular case. Here, the debtors did not provide FSA with either the time of filing or the case number, both of which are crucial to a quick verification of the filing. This raises a significant concern that FSA did not receive "adequate notice" of the bankruptcy and that the violation, if one occurred, was not "willful."

Before the Court needs to address this issue, however, it must be determined whether there was in fact a violation of the stay. FSA contends that the cows ceased to be property of the debtors' bankruptcy estate before the case was filed. FSA points to the language in the foreclosure judgment which provides, in pertinent part, that:

> IT IS FURTHER ORDERED that the defendants, their heirs, successors or assigns, and all persons claiming under them, be forever barred and foreclosed of all right, title, interest and equity of redemption in said mortgaged collateral.

Under FSA's interpretation, the debtors had nothing more than a possessory right to the collateral after the entry of this judgment. This possessory right was terminated upon the seizure of the cattle in the hours before the filing. Accordingly, FSA contends that the debtors held no property interest whatsoever in the cattle upon the filing, and that therefore there was no violation of the automatic stay.

The debtors offer two reasons why the stay was in fact violated. First, they contend that FSA's sale of the cows constituted the "continuation" of an action against them personally, which is prohibited by Section 362(a)(1). Their second argument is that the cows *were* property of the estate at the time of the bankruptcy filing, and as a result FSA violated § 362(a)(4) because it acted to "enforce a lien against property of the estate."

■ In response to the debtors' first argument, FSA submits that the sale of the cattle did not constitute the continuation of an action to "collect a claim" against the debtors. The Court must agree. Subsection 362(a)(1) prohibits the commencement or continuation of any action to "recover a claim against the debtor." As FSA points out, the conceptual problem with the debtors' argument is that FSA's actions were not against the debtors—FSA acted against the collateral. While the ultimate impact of the seizure would be to reduce the debtors' total obligations, the fact remains that the act was against the debtors' property, not the debtors personally.

■ If it were true that an action against collateral is always an action against the debtor, it would be unnecessary for the section to contain provisions which prohibit creditors from taking any action against "property of the estate." Given those provisions, however, it is clear that § 362(a)(1) prohibits only those actions which seek to recover from the debtors personally. Accordingly, FSA did not violate that subsection when it executed upon its replevin judgment. In fact, FSA's "action against the debtors" had already been concluded by the entry of the judgment.

■ Next, the debtors argue that the cattle *were* in fact property of the estate upon the bankruptcy filing. They analogize the situation to the mortgage foreclosure context, in which the debtor retains rights in the collateral until the foreclosure sale is confirmed. They cite *In re Berge*, 33 B.R. 642 (Bankr.W.D.Wis.1983) in support of this contention. It is true that in this jurisdiction it is the confirmation of a foreclosure sale, rather than the sale itself, which terminates a debtor's right to redeem the property. *See In re Lynch*, 12 B.R. 533 (Bankr.W.D.Wis. 1981).

FSA contends that *Berge* and *Lynch* are inapplicable in this case, and the Court must again agree. While it is generally agreed that "property of the estate" under § 541 is a broad concept, the debtor must possess *some*

interest in the asset for it to fall within the purview of § 541. In the mortgage foreclosure context, the debtor's rights are not eliminated by the sale. Therefore, the debtor retains a right of redemption which is not extinguished until the sale is confirmed. *Lynch*, 12 B.R. at 534–35. This interest permits the debtor to utilize a bankruptcy proceeding to reorganize the debt against the property, even after a foreclosure sale. *Id.*

In their briefs, the parties have debated the nature and effect of the September 6, 1996, judgment upon the debtors' rights to the cattle. The debtors argue that the judgment merely gave FSA the right to "possession of the cattle, not ownership." They believe that "ownership" was not transferred until the cattle were sold. In this regard, FSA concedes that under *Confidential Loan & Mortgage Co. v. Hardgrove*, 259 Wis. 346, 350, 48 N.W.2d 466, 468 (1951), a replevin action "has for its object the obtaining of the actual possession of the subject matter." However, FSA argues that the September 6, 1996, judgment not only gave FSA the immediate right to possession of the cattle, but also foreclosed the debtors' ownership interest in the cattle.

Both arguments possess an element of accuracy. For example, the debtors are clearly correct that they retained some interest in the cattle after the entry of the judgment. This interest may only have been an equitable possessory interest in the cattle, but it is an interest within the broad definition of "property of the estate." [2] The question, accordingly, is not the effect of the judgment itself, but rather when the debtors' last remaining interest in the cattle was extinguished. The debtors submit that the sale was the terminating event. Under the facts of this case, however, it was upon execution that the debtors lost any remaining interest in the cattle.

In *Lynch*, the Court stated that "when state law terminates the debtors' interest in

mortgaged property, the Bankruptcy Court cannot ... rejuvenate that interest." 12 B.R. at 534. Given that under Wisconsin law the debtor's right to redeem real property persists at least until confirmation, the debtor retains an "equitable interest" in real property as long as the foreclosure sale is not confirmed. *Id.* at 535. The question in this case, however, is whether the debtors retained *any* equitable interest whatsoever in the cattle once they were seized by FSA.

When FSA arrived on the property to collect the cattle, the debtors had only a possessory interest in the cows. Any other interest in the cattle had been extinguished by the foreclosure judgment. Unlike the mortgage foreclosure situation, there was no intermediate step of a foreclosure sale which would be followed by a confirmation hearing. The only thing left to eliminate the debtors' rights in the property was to execute upon the judgment and take the cattle. The subsequent sale and credit of the proceeds were mere ministerial acts and not, as the debtors contend, essential steps in the process.

 Thus, by the time the debtors filed bankruptcy, they did not retain a right of redemption or other equitable interest contemplated by *Lynch*. Once FSA seized the cattle, the debtors could not redeem them by payment. Nor could they have redeemed the cattle after the sale. In the mortgage foreclosure context, the debtor retains such a right. That is the "interest" which constitutes property of the estate, and which permits a debtor to reorganize the debt in bankruptcy. *Lynch*, 12 B.R. at 534–35. Since the debtors' possessory right to the cattle was terminated prior to the filing, there was no interest which could be transferred to the bankruptcy estate. The bankruptcy filing cannot rejuvenate rights which were terminated prepetition by operation of state law. *Lynch*, 12 B.R. at 534. While it is unfortunate for the debtors that the cows' happy existence was cut short, the reality is that

---

**2.** Had the case been filed prior to execution of the judgment, it may well have fallen subject to the old axiom that "possession is 9/10's of the

law" as the debtors would likely have been able to retain the cattle and reorganize.

FSA did not violate § 362 because the cows were not property of the estate within the meaning of § 541.

Accordingly, the debtors' motion for contempt is denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.