In the matter of Wilson Herman Lee BROWN, Debtor.

Wilson Herman Lee BROWN, Plaintiff,

v.

JOE ADDISON, INC., Defendant.

Bankruptcy No. 97–40160.
Adversary No. 97–4034.

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

July 3, 1997.

Charles W. Bell, Savannah, GA, for Plaintiff.

William F. Hinesley, III, Savannah, GA, for Defendants.

## MEMORANDUM AND ORDER

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

### FINDINGS OF FACT

Debtor's Chapter 13 case was filed on January 17, 1997. Prior to the filing of his Chapter 13 bankruptcy, on January 3, 1997, Debtor's vehicle was repossessed by agents

of the Defendant, Joe Addison, Inc. The repossession resulted from Debtor's default in his making payments on a note payable to Defendant executed on September 19, 1996, for the purchase of a 1989 Jeep Cherokee. Debtor had traded in a 1987 Oldsmobile valued at $1,000.00, paid $650.00 cash down for the purchase of the vehicle and financed $8,000.00 on a note that required payments of $350.00 per month.

After the filing of the Debtor's Chapter 13, his attorney contacted an agent of the Defendant explaining that a bankruptcy case had been filed, and requested that the vehicle be returned to the Debtor. This request was refused and in response Debtor, through counsel, filed this adversary proceeding on February 14, 1997, seeking turnover of the vehicle, damages for its loss of use, and other relief. A timely answer was filed by Defendant's counsel on Defendant's behalf on April 15, 1997. On April 16 and again on May 29 status and pre-trial conferences were held and the matter was assigned for trial on June 20.

The evidence at trial revealed that following the filing of the adversary proceeding, because of concerns about possible vandalism, Defendant had one of its agents drive the vehicle from a lot where it was then located to one where additional security was available. In the course of the trip from one location to the next, the employee, who, unbeknownst to the Defendant, suffered from seizure disorders, was involved in an automobile collision and the car was totaled. It is therefore impossible for the Court to order return of the vehicle and as a result the Debtor seeks recovery of actual and punitive damages and attorney's fees.

The Debtor established actual damages of $3,087.00 which include his cost of obtaining alternate transportation, his cash down payment and the value of his trade-in, insurance premiums which he paid to maintain the insurance on the vehicle prior to its repossession, and the down payment which he gave his wife for the purchase of a substitute vehicle.

## Contentions of the Parties

Debtor contends that immediately upon the filing of his Chapter 13 case and upon providing notice of the same to the Defendant, Defendant was obligated to return the vehicle to Debtor's possession without further delay and without the intervention of the Court.

The Defendant contends that since the repossession occurred pre-petition, and possession was already lawfully vested in the Defendant as a matter of state law, it had the right to notice and a hearing before being under any affirmative obligation to return the vehicle to the Debtor.

After considering the evidence and applicable authorities I find that relief should be denied the Plaintiff and judgment entered in favor of the Defendant.

## Legal Framework

11 U.S.C. Section 362 provides in relevant part as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The automatic stay is the fundamental debtor protection provision embodied in the Code and halts virtually all actions by creditors against debtors immediately upon the filing of a petition under Title 11. Any acts taken, subsequent to the filing of a petition, with or without notice of the filing of a petition, are void *ab initio*. *See Borg Warner Accept. Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982). Furthermore, acts taken following the filing of a petition after actual knowledge of the pendency of the case constitute a willful violation of the automatic stay and subject the perpetrator to actual damages, including at-

torney's fees, and potentially to an award of punitive damages for the willful violation. *See* 11 U.S.C. § 362(h); *Matter of Flynn,* 169 B.R. 1007, 1013 (Bankr.S.D.Ga.1994); *Matter of Newton,* Ch. 13 Case No. 96–41369, Adv. Pro. No. 96–4131, slip op. (Bankr.S.D.Ga., Dec. 19, 1996) (Davis, J.).

■ Section 362 stay violation repossession cases ordinarily follow recurring fact patterns and not all post-petition repossessions result in damage awards. The first common pattern arises where the repossession occurred post-petition but at a time prior to the creditor being informed of the filing, either by receipt of notice from the Court or by notice given by the debtor or debtor's counsel. A repossession in these circumstances is void *ab initio,* but the creditor is not liable in damages for the act of repossession since there was no actual notice of the pendency of the case. *See In re Miller,* 10 B.R. 778 (Bankr.D.Md.1981), *aff'd.,* 22 B.R. 479 (D.Md.1982). Although the automatic stay was violated, the violation was without notice of the pendency of the case and thus is not considered "willful." Some courts described these violations as "technical or inadvertent." *See Commercial Credit Corp. v. Reed,* 154 B.R. 471 (E.D.Tex.1993) (holding that creditor who repossessed vehicle postpetition and returned automobile within twenty hours of receiving notice only committed "technical" violation of automatic stay).

■ Nevertheless, the creditor has an affirmative duty to undo any post-petition repossession immediately upon being notified of the pendency of the bankruptcy case even in the absence of any court order, and failure to do so will subject the creditor to damages. *See Matter of Newton,* slip op. at 8 ("because Defendant failed to return Debtor's automobile, it violated its duty under the Bankrupt-

cy Code and became liable for damages"). *See In re Miller,* 10 B.R. at 780; *In re Belcher,* 189 B.R. 16, 18 (Bankr.S.D.Fla. 1995); *Matter of Kern,* Ch. 13 Case No. 96–21363, Adv.Pro.No. 96–2078, slip op. at 7 (Bankr.S.D.Ga., June 24, 1997) (Davis, J.).

■ A second common pattern arises where a creditor has repossessed property post-petition, and prior to the time that the Court's notice of the pendency of the case has been received, but *after* the debtor or someone on the debtor's behalf has informed the creditor that a case was filed. In these cases it is clear that the creditor, having been given notice in this manner, is under an obligation to make inquiry of the Clerk's Office whether a case is in fact pending. If a creditor fails to make inquiry after being put on notice and repossesses, that act is taken at the creditor's risk and subjects the creditor to damages.[1] *See In re Marine Pollution Service, Inc.,* 99 B.R. 210 (Bankr. S.D.N.Y.1989) (holding that creditor who proceeded with foreclosure after receiving actual notice from debtor was liable for violating the automatic stay).

■ Finally, some repossessions, such as in the present case, occur *pre*-petition and the question is whether retention of collateral post-petition, which was lawfully repossessed pre-petition, without more, constitutes a willful stay violation. Certainly it is undisputed that property repossessed pre-petition, but not disposed of, remains estate property and thus cannot be sold or otherwise disposed of post-petition without a court order lifting the stay. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The narrow focus of this order is whether a creditor holding collateral repossessed *pre*-petition has an affirmative duty to turn its collateral over to the debtor or risk

---

1. Of course sometimes creditors are told by debtors or individuals acting on a debtor's behalf that a case is pending when in fact it has not been filed. *See In re Karis,* 208 B.R. 913 (Bankr. W.D.Wis.1997) (holding that telephone call from debtor's attorney did not constitute notice of bankruptcy filing because petition had not in fact been filed). Sometimes this representation is innocent as for example when a petition has been mailed from a city removed from the location of a Clerks Office and there is a delay between the time the case is mailed and when it is actually filed. Other times the representation is entirely false and a creditor who takes action after being given an erroneous or a false notice that a case was pending is free to act, but acts at his or her peril. *See In re Reed,* 11 B.R. 258 (Bankr.D.Utah 1981) (holding that once creditors receive knowledge of bankruptcy filing, either directly or indirectly, they assume risk of their actions.)

882

damages for a willful stay violation, or whether the creditor has the right to hold the collateral pending a hearing?

I have held previously in unpublished decisions that the creditor in this situation is free to maintain property repossessed pre-petition and hold it pending a hearing to be held either on the creditor's motion for relief, or alternatively, on the debtor's adversary proceeding to recover the vehicle. There is a split of authority, however, as to whether this is the proper rule as evidenced by decisions rendered on both sides of this issue. *Compare In re Knaus,* 889 F.2d 773 (8th Cir. 1989); *In re Del Mission Limited* 98 F.3d 1147 (9th Cir.1996); *In re Sharon,* 200 B.R. 181, 190 (Bankr.S.D.Ohio 1996); *In re Ryan (General Motors Acceptance Corp. v. Ryan ),* 183 B.R. 288 (M.D.Fla 1995) *with In re Young* 193 B.R. at 629; *In re Deiss,* 166 B.R. 92 (Bankr.S.D.Tex.1994). *In re Richardson,* 135 B.R. 256 (Bankr.E.D.Tex.1992).

Because of the split among courts and the fact that the Eleventh Circuit has not ruled in this matter, it remains open to question which of the two lines of authority should prevail in this Court. That uncertainty is manifested in the diverging approaches taken by the judges of the Bankruptcy Court of this District who view the matter differently. *See In re Gunn,* Ch. 7 Case No. 93–10735, Adv., Pro. No. 93–01078, slip op. (Bankr. S.D.Ga., March, 30, 1994) (Dalis, J.).

The purpose of this Order is to articulate the basis on which I have previously ruled on similar facts, and to provide a vehicle for the parties to seek appellate review of this decision in light of the uncertainty in the law, in order to obtain controlling precedent that can be applied district-wide to this fundamental issue.

### CONCLUSIONS OF LAW

11 U.S.C. Section 362 is quite broad, but at the same time it is specific and not unlimited in scope. The relevant question, for purposes of this order, is whether holding collateral repossessed pre-petition amounts to "any act ... to exercise control over property of the estate." Cases applying Section 362(a)(3) generally interpret its scope with reference to the duty to turnover property in Section 542. The fundamental approach of the two Circuit Courts with which I differ on this issue is that "the law clearly requires turnover. *See* 11 U.S.C. § 542(a);" *In re Knaus,* 889 F.2d at 775; *In re Del Mission Limited,* 98 F.3d at 1151. However, *Knaus* arises in a Chapter 11 context and *Del Mission* in a Chapter 7. Although most provisions of the Code apply in each chapter, here the distinction is important. Indeed, Section 542 provides generally that an entity in possession of estate property "shall" deliver it to the *trustee.* Read together with Section 362(a)(3) this supports an automatic turnover duty with respect to property repossessed pre-petition. But that duty does not arise in favor of a *Chapter 13 debtor.* Section 1303 grants certain trustee powers to Chapter 13 debtors, but Section 542 is not one of them. Because Section 542 rights are not granted to Chapter 13 debtors by virtue of Section 1303, Defendant was under no duty to turn this car over to Debtor. *Knaus* held that failure to fulfill the Section 542 duty to turnover is a "prohibited attempt to 'exercise control over the property of the estate.'" *See In re Knaus,* 889 F.2d at 775. However, because Section 542 is inapplicable to the debtor and because debtor's right to use property under Section 363 is subject to the provision that the Court, on request, may require adequate protection of the creditor's interest as a pre-condition to debtor's use, I find *Knaus,* and, *Del Mission,* which relied on Section 542 to be distinguishable and respectfully decline to follow them.

Because the Chapter 13 debtor is not the beneficiary of a creditor's turnover duty under Section 542, debtor's right to recover the vehicle must be founded on some other provision of the Code. The provisions on which a debtor may rely to recover property repossessed pre-petition are as follows:

**Section 1306(b)** Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

**Section 363(b)(1)** The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

**Section 363(e)** Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

The mandate of Sections 1306 and 363 seems clear. Debtor has the right to possess estate property, which connotes the right to use estate property, but debtor's right to possess and use is not automatic or unqualified. Rather, debtor's use is (1) after notice and a hearing if out of the "ordinary course" and (2) subject to the court establishing conditions for adequate protection in every case. "Adequate protection," defined in Section 361, includes periodic cash payments and "other relief" to assure that the creditor receives the "indubitable equivalent" of its collateral. This usually involves, at a minimum, some showing that collateral is adequately insured, that debtor is employed, that debtor has made and can continue to make periodic payments to the Chapter 13 trustee, that the vehicle is being adequately maintained, and that the projected payments from the trustee will reasonably cover the future depreciation of the vehicle. Because there is no affirmative, automatic turnover duty to a Chapter 13 debtor and because debtor's use of property is subject to the "adequate protection" limitation. I am of the view that so long as the creditor merely maintains the status quo it has not violated the automatic stay and thus it is free to await a judicial determination whether debtor can recover the property, without violating the stay in Chapter 13.

The fact remains, however, that Section 362(a)(3) stays "any act ... to exercise control over property of the estate." Is a creditor who simply holds property repossessed pre-petition in violation of the stay? Is mere inaction the same as any "act"[2] to exercise control and thus prohibited? Interestingly enough, the leading case which holds differently than I focuses solely on the language "exercise control" to the exclusion of the

word "act." *See Knaus* "a prohibited *attempt* to exercise ...;" This leads, inevitably and erroneously I believe, to an over-broad application of Section 362(a)(3).

A better analytical view of what "acts" are stayed under Section 362(a)(3) is found in the cases of *In re Richardson* and *In re Young. Richardson* observed that:

The effect of this stay is to freeze the status quo. To the extent that a creditor fails to desist in these collection attempts and attempts to exercise control over property of the estate post-petition, such creditor can be sanctioned pursuant to § 362(h). However, this provision for creditors who affirmatively act in violation of the stay post-petition can not be extrapolated to punish creditors who while legally seizing the property of the estate pre-petition, failed to return this property immediately to the debtor post-petition. In maintaining the seized property in the status it enjoyed just before the filing of debtor's petition, a creditor is merely complying with the spirit of the § 362 freeze.

*In re Richardson,* 135 B.R. at 258–59. And *Young,* a case which is factually indistinguishable from the case at bar, recognizes that in order to determine the scope of Section 362(a)(3) it is necessary to examine the provisions of the Bankruptcy Code governing use of property and turnover. *Id.* at 621. Judge Teel found that the language of Section 363(a)(3) regarding "acts to exercise control" to be ambiguous.

One commentator has commented that had Congress intended the amendment to Section 362(a)(3) to require immediate turnover, "more passive language such as retain control would be found in the revision...." By the same logic, had Congress intended to prohibit creditors from holding property seized pre-petition, it also could have barred an act to "retain possession." Read in this context, the prohibition against an act to exercise control does not reach the passive act of continuing to possess property.

---

2. "Act" is defined as "a thing done or being done: DEED PERFORMANCE ... an external manifestation of the will: something done by a person pursuant to his volition." Webster's Third New International Dictionary 20 (1986).

*Id.* at 625. The opinion further observes that the approach requiring immediate turnover of property seized pre-petition is contrary to the logical interaction of Sections 363 and 542. It holds chat the burden of proof of adequate protection is on the trustee [in my analysis, the *debtor* would shoulder the adequate protection burden pursuant to Sections 1303, 1306 and 363(e) ]:

> Logically, therefore, the creditor should be entitled to hold on to the property during the pendency of the Section 542 action until the adequate protection question is resolved. The obvious rationale implicit in permitting the secured creditor to retain possession of the seized property while opposing turnover ... is that the creditor may suffer the very harm that adequate protection is designed to avoid if the property is turned over to the trustee before the trustee proves that a creditor is being given the adequate protection to which it is entitled.

*Id.* at 625.

> It is one thing for the Bankruptcy Code to allow the debtor to use property in the debtor's possession without the question of adequate protection being first addressed: as outside bankruptcy, the creditor has to take an affirmative act to protect itself. . . .
>
> It is quite another thing to require turnover of repossessed property to the debtor without adequate protection being first addressed. . . .

*Id.* at 627. Finally, the *Young* decision relies on the decision of *United States v. Inslaw*, 932 F.2d 1467, and concludes

> The Court of Appeals view of Section 362(a)(3) supports this court's conclusion that Congress did not intend to expand the automatic stay to mandate affirmative acts on the part of the creditors. Nor did Congress intend with this amendment to abrogate the creditor's right to assert an entitlement to adequate protection prior to turnover. Rather, as the Court of Appeals stated, the stay is intended only to prohibit post-petition affirmative acts by creditors and thus acts as a freeze of the status quo. . . .

*Id.* at 629. I find the rationale of the *Young* decision to be quite persuasive.

Finally, in *Citizens Bank of Maryland v. Strumpf*, a unanimous Supreme Court observed, regarding Section 362(a)(3), that "petitioner's temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise." —— U.S. ——, ——, 116 S.Ct. 286, 290, 133 L.Ed.2d 258 (1995). While the case deals specifically with the question of administrative freezes on debtors' accounts, the statement that a *refusal* to act is not an "act ... to exercise control" is consistent with my holding here.

■ Accordingly, because I find no automatic turnover duty to a Chapter 13 debtor, because the Chapter 13 debtor's use of property is subject to a prior ruling on adequate protection, and because I find that passively maintaining the status quo in property lawfully repossessed pre-petition does not amount to an "act ... to exercise control," I hold that Defendant did not violate the automatic stay.

■ The question still remains, because Section 363(e)'s adequate protection precondition arises "on request" of the creditor, whether the creditor has the duty to initiate a proceeding for relief from stay and, in the absence of timely bringing such an action, must voluntarily turn the property over or risk violating the stay. I decline to assign this burden to the creditor which repossessed pre-petition in the absence of clear direction from Congress, for the following reasons:

(1) Section 363(b) requires prior notice and a hearing if the use is outside the "ordinary course."

(2) There is no affirmative duty to turnover estate property to a debtor in Chapter 13 since Section 542 is inapplicable.

(3) It is not universally true that a debtor will seek to recover property repossessed pre-petition. It is therefore unwarranted to shift the burden of initiating a court action to a party other than the one whose decision it is.

If the debtor seeks recovery of the property informally and the demand is refused, since the creditor is under no Section 542 duty of turnover, debtor's remedy is an ac-

tion to recover property,[3] which under Bankruptcy Rule 7001(1) requires an adversary proceeding. It is interesting that the Rule 7001 action is not denominated as a "turnover" action, which would be limited to a trustee's action under Section 542, but rather an "action to recover property" which is broader and encompasses both the trustee's enforcement of Section 542 and a debtor's action pursuant to Sections 1306 and 363.

Since the creditor which repossessed prepetition is lawfully in possession, and need only relinquish possession after the Court rules on adequate protection, it seems appropriate to place the burden of going forward on debtors who must comply with Rule 11 requirements in seeking recovery of property. This will eliminate some completely frivolous demands when debtor is clearly incapable of providing adequate protection. The contrary rule would require creditors to undertake the expense of bringing a legal action to prove the absence of adequate protection, even when the debtor has no intention of seeking recovery of the property, where the debtor is ineligible refile a case, or where the debtor, who could with impunity demand the return of property repossessed pre-petition informally, realizes that it cannot prevail and thus declines to file an adversary proceeding to recover the property.

## *ORDER*

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that Defendant, which repossessed Debtor's vehicle pre-petition, did not violate the automatic stay by refusing to voluntarily return the vehicle to Debtor after the Chapter 13 case was filed. Therefore, the Clerk is directed to enter judgment in favor of the Defendant.

---

**3.** It should be noted here that in appropriate circumstances, expedited or emergency relief is readily available, at least on an interim basis.