**In the Matter of Johnathan RUTHERFORD Dimetrice Rutherford, Debtors.**

**Johnathan Rutherford Dimetrice Rutherford, Plaintiffs,**

**v.**

**Auto Cash, Inc., Defendant.**

**Bankruptcy No. 04–81385–WHD. Adversary No. 04–6679.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 29, 2005.

Shonterria Renek Martin, Esq., Shonterria R. Martin & Associates, Jonesboro, GA, for Debtors/Plaintiffs.

R. Brian Wooldridge, Esq., Mann & Wooldridge, Newnan, GA, for Defendant, Auto Cash, Inc.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Dimetrice Rutherford (hereinafter the "Debtor") seeks sanctions against Auto Cash, Inc. (hereinafter the "Defendant") pursuant to section 362(h) of the Bankruptcy Code. The Debtor contends that the Defendant willfully violated the automatic stay when it refused to turn over the Debtor's vehicle, which the Defendant repossessed prior to the filing of the Debtor's bankruptcy petition. The Defendant opposes sanctions, arguing that it did not violate the automatic stay by failing to turn over the vehicle in the absence of a court order determining that the Defendant's interest in the vehicle is adequately protected. Following a hearing on January 24, 2005, the Court took the matter under advisement.

### BACKGROUND

The Debtor purchased a 1997 Toyota Camry (hereinafter the "Vehicle") from the Defendant on July 3, 2004 by making a down payment of $265. The Defendant financed the remainder of the purchase price and retained a security interest in the Vehicle. On October 4, 2004, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code (case number 04–13184–WHD). The Defendant objected to the confirmation of the Debtor's proposed Chapter 13 plan, and, on December 16, 2004, confirmation of the Debtor's proposed plan was denied. The case was dismissed on December 20, 2004.

At some time between December 20 and 21, 2004, the Defendant repossessed the Vehicle. On December 23, 2004, the Debt-or filed a second voluntary petition under Chapter 13. In connection therewith, the Debtor filed a proposed Chapter 13 plan, which provided for a 100% payment to unsecured creditors. The Debtor's proposed plan also provided for the payment of the Defendant's secured claim to the extent of the value of the Vehicle on a *pro rata* basis and modified the contract interest rate owed to the Defendant by lowering the interest rate to prime plus 2%. In her Schedules, the Debtor valued the Vehicle at $3,100 and listed the amount owed on the Defendant's claim as $14,162.

The Debtor asserts that her attorney notified the Defendant's attorney of the filing of the second petition by telephone on December 23, 2004 and notified the Defendant's representative by telephone on December 28, 2004. The Defendant does not deny that it received notice of the bankruptcy filing or that it refused the Debtor's December 29th demand for the return of the Vehicle. Also, the Defendant admits that it suggested that the Debtor file a Complaint for Turnover because it did not believe that the Debtor could provide adequate protection of its interest in the Vehicle. More specifically, the Defendant questioned the "Debtor's ability to make timely payments into [her] plan, the recent purchase of the vehicle, and the Debtor's failure to pay in the Debtor's last case." There is also some question as to whether the Debtor provided the Defendant with proof of full coverage insurance. The Debtor's Motion asserts that proof of insurance was attached to a letter sent to the Defendant's counsel via facsimile on December 26, 2004, but the Defendant's counsel contends that no proof of insurance was in fact attached to the letter. In its response, the Defendant attached, as an exhibit, a notice dated January 13, 2005, stating that insurance coverage would be terminated on January 25, 2005, which suggests that coverage was in fact in place

on December 29, 2004. However, no evidence was presented at the hearing regarding the question of whether insurance existed at that time or whether the Defendant was provided with proof of insurance.

On December 30, 2004, the Debtor filed a complaint for turnover and the instant Motion. On January 24, 2005, the Court held an expedited hearing on the complaint and the Motion. At that time, the Court ordered the Defendant to return the Vehicle to the Debtor and took under advisement the matter of whether the Defendant violated the automatic stay by refusing to return the Vehicle upon the Debtor's request and, if so, whether the Debtor is entitled to damages pursuant to section 362(h).

## DISCUSSION

The commencement of a bankruptcy case, upon the filing of a voluntary petition, creates a bankruptcy estate. 11 U.S.C. §§ 541(a); 301.[1] If the debtor commences a case by filing a petition under Chapter 13, "property of the estate" includes, among other interests, those property interests specified in section 541 of the Code. *See* 11 U.S.C. § 1306. Such property interests include "all legal or equitable interests of the debtor in property as of the commencement of the case," without regard to the fact that the debtor is not in possession of the property. 11 U.S.C. § 541(a)(1) ("Such estate is comprised of all the following property, wherever located and by whomever held."). A debtor retains a legal interest, within the meaning of section 541(a)(1), in a vehicle repossessed prior to the filing of the debtor's petition so long as the debtor continues to hold legal title to the vehicle under applicable state law. *See Motors Acceptance Corp. v. Rozier (In re Rozier)*, 348 F.3d 1305, 1307 (11th Cir.2003) ("If, as the district court held, both legal title and the right of redemption of a vehicle remain with a defaulted debtor even after his creditor's repossession of the vehicle, then the vehicle remains part of the debtor's bankruptcy estate under section 541(a)(1) of the Bankruptcy Code . . . ."); *see also Bell–Tel Credit Union v. Kalter*, 292 F.3d 1350 (11th Cir.2002); *Charles R. Hall Motors, Inc. v. Lewis*, 137 F.3d 1280, 1285 (11th Cir.1998). Under the Georgia law applicable to this case, " 'ownership of collateral does not pass to a creditor upon repossession, but remains with the debtor until the creditor complies with the disposition or retention procedures of the Georgia UCC.' " *Motors Acceptance Corp. v. Rozier (In re Rozier)*, 376 F.3d 1323 (11th Cir.2004) (citing *Motors Acceptance Corp. v. Rozier*, 278 Ga. 52, 597 S.E.2d 367 (2004)).

Here, the Defendant repossessed the Vehicle prior to the filing of the Debtor's petition, but apparently did not comply with the disposition or retention procedures of the Georgia Uniform Commercial Code.[2] Accordingly, the Vehicle became property of the Debtor's bankruptcy estate upon the filing of the Debtor's petition on December 23, 2004.

The commencement of a bankruptcy case also triggers an automatic stay that prevents creditors from taking "any action to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs

---

1. In this case, the Debtor and her spouse actually filed a joint petition as permitted by section 302.

2. The Defendant has not argued that the Vehicle did not become property of the Debtor's bankruptcy estate.

and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

The Debtor contends that the Defendant's failure to return the vehicle upon her request was a willful violation of the automatic stay. She seeks an award of compensatory damages, attorney's fees, and punitive damages. No evidence was presented as to the amount of any damages suffered by the Debtor due to the Defendant's conduct. However, before reaching that issue, the Court must first determine whether the Defendant's failure to turn over the Vehicle upon the request of the Debtor constitutes a willful violation of the automatic stay.

The case law is split on the issue of whether a creditor violates the automatic stay by failing, upon the request of the debtor, to turn over a vehicle that was repossessed lawfully prior to the bankruptcy filing. See Mitchell v. BankIllinois, 316 B.R. 891, 899 (S.D.Tex.2004) (collecting authorities). The majority of courts hold that upon the debtor's request and a tender by the debtor of proof of insurance, the creditor must return the vehicle or move for relief from the stay and a determination of adequate protection. Id. As the Mitchell court noted, an "emerging minority" of courts have held that the creditor is entitled to retain the vehicle until it is satisfied that its interest is protected or the bankruptcy court orders the creditor to turnover the vehicle. Id.

■ Historically, this Court has held that a creditor who retains a vehicle repossessed pre-petition does not run afoul of the automatic stay, so long as the creditor does not dispose of the vehicle. Although it is clear that relief from the automatic stay would be required before a creditor could sell the vehicle, see In re Johnson, 2003 WL 21703529 (Bankr.N.D.Ga.2003) (Bonapfel, J.), this Court has not previously required creditors to obtain relief from the stay in order to retain the vehicle until the Court can hear and decide the issue of adequate protection. That being said, the Court is concerned by the practice of some creditors of retaining a vehicle after being provided with proof of insurance, along with proof that the creditor's secured claim will be paid through the debtor's proposed Chapter 13 plan, until the debtor is forced to file a complaint for turnover. In essence, these creditors are making their own determination as to whether the debtor's proposed plan will be sufficient to provide the creditor with adequate protection of its interest in the collateral. This is contrary to the mandate of section 363 of the Code, which authorizes the Bankruptcy Court, rather than the creditor, to make this determination upon notice and a hearing. By forcing the debtor to initiate proceedings to recover a vehicle, which may be his or her sole source of transportation, the creditor may jeopardize the debtor's reorganization. Retaining a repossessed vehicle under these circumstances may risk the debtor's employment and force the debtor to incur additional expenses that are not provided for within his or her limited budget. The automatic stay is intended to deter just this type of conduct and to protect all creditors from actions taken by one creditor who is trying to better its position without the necessity of filing a motion for relief from stay or a motion for a determination of adequate protection. Consequently, and for the reasons stated below, the Court will follow the holding of In re Kirk, 199 B.R. 70 (Bankr. N.D.Ga.1996) (Murphy, J.) (failure to return repossessed vehicle as required by section 542 constitutes a violation of the automatic stay).

## A. Failure to Turn Over Estate Property Violates the Automatic Stay

The Bankruptcy Code is a complicated system of statutes that provides various

parties with certain rights and obligations. These statutory provisions are designed to provide debtors with relief from debt while protecting the rights of secured creditors and maximizing the return to unsecured creditors. Section 541, as we have seen, designates the property interests that comprise the bankruptcy estate, while section 362 provides the debtor or trustee with time to investigate and collect this property so that it may either be liquidated for the benefit of creditors or used to generate additional income to fund a repayment plan and a reorganization.

■ In order to aid the trustee or the debtor-in-possession in collecting the property of the estate, section 542 provides that, with two exceptions not relevant here, "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 . . ., or that the debtor may exempt under section 522 . . ., shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). This provision creates an affirmative obligation on the part of the party holding estate property to turn the property over, and that obligation is not dependent upon the holding of a hearing or the entry of an order by the bankruptcy court. *Compare* 11 U.S.C. § 542(a) ("shall deliver to the trustee"), *with* 11 U.S.C. § 542(e) ("Subject to any applicable privilege, *after notice and a hearing, the court may order* any attorney . . . to turn over or disclose . . . recorded information to the trustee.") (emphasis added); *see also In re Del Mission, Ltd.,* 98 F.3d 1147 (9th Cir.1996).

■ The concept of "adequate protection" enables the bankruptcy court to balance the right of a secured creditor to have the value of its interest in the collateral maintained during the pendency of a bankruptcy case against the need of the trustee or debtor-in-possession to use the property to effectuate a reorganization. While section 363 empowers the court to permit the trustee to use property of the estate other than in the ordinary course of business, section 363(e) provides that "at any time, on request of an entity that has an interest in property used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(b); (e). Accordingly, the trustee or debtor-in-possession may use property of the estate in the ordinary course of business without court approval. Should the creditor with an interest in the property believe that its interest is not adequately protected, it must move the court to prohibit, limit, or condition the trustee's use.

The question before the Court is whether these statutory provisions, taken together, require the secured creditor to turn over property upon the demand of a Chapter 13 debtor if the creditor has taken possession of the property prior to the commencement of the case. In general, four arguments support the minority position that secured creditors do not violate the automatic stay by refusing turn over to the Chapter 13 debtor: 1) section 542 does not obligate a party holding estate property to turn the property over to the debtor in a Chapter 13 case; 2) the obligation to turn over property created by section 542 is subordinate to a secured creditor's right to demand adequate protection under section 363; 3) merely retaining collateral repossessed pre-petition is not an "act" to exercise control over property of the estate within the meaning of section 362(a)(3); and 4) retaining collateral possessed pre-petition is allowed because the

creditor is simply maintaining the *status quo. See Brown v. Addison (In re Brown)*, 210 B.R. 878, 882–84 (Bankr. S.D.Ga.1997); *In re Richardson*, 135 B.R. 256 (Bankr.E.D.Tex.1992).

■ The Court rejects the minority's first argument, illustrated by the bankruptcy court in *Brown*, that the obligation to turn over property of the bankruptcy estate does not inure to the benefit of the Chapter 13 debtor. In *Brown*, the bankruptcy court held that section 542, which specifically states that an entity in possession of estate property shall deliver the property to the "trustee," does not require a party in possession of estate property to turn that property over to the Chapter 13 debtor. 210 B.R. at 882. The *Brown* court arrived at this conclusion by analyzing section 1303, which designates certain rights and powers belonging to the Chapter 13 debtor. *See* 11 U.S.C. § 1303("Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*), of this title."). The *Brown* court reasoned that, since section 1303 does not bestow upon the Chapter 13 debtor the right to receive property under section 542, the debtor must not be the party to which a creditor is required to return estate property. *See id.* But as noted by the Sixth Circuit Bankruptcy Appellate Panel in *In re Sharon*, 234 B.R. 676, 687 (6th Cir. BAP 1999), this interpretation creates an absurd result. Section 1306 and section 363 grant to the Chapter 13 debtor the right to use estate property in the ordinary course, and the Chapter 13 trustee has no authority to use that property. It would make little sense to provide the Chapter 13 debtor with the exclusive ability to use estate property, but require parties to deliver possession of it to the Chapter 13 trustee. *See id.; In re Cole-*

*man*, 229 B.R. 428, 429–30 (Bankr.N.D.Ill. 1999) (Chapter 13 debtor has standing to seek turnover of property pursuant to section 542); *In re Williams*, 316 B.R. 534 (Bankr.E.D.Ark.2004) (holding that section 542(a) creates an affirmative duty to turn over estate property to the Chapter 13 debtor).

■ The second argument, that a secured creditor's right to adequate protection trumps the duty to turn over estate property and thus provides an exception to the automatic stay, contradicts statutory language and Congressional intent. If Congress had intended to permit secured creditors to withhold property of the estate until the bankruptcy court made a determination of adequate protection and ordered turnover, Congress could have provided a specific exception within section 362 for such actions. Alternatively, Congress could have stated within section 542(a) that a secured creditor is not required to turn over collateral that remains estate property until the bankruptcy court has determined that the secured creditor's interest is adequately protected. Indeed, when Congress intended to create an exception to the similar duty to pay a matured obligation owed to the estate, it did so clearly within section 542(b). *See* 11 U.S.C. § 542(b) (excusing payment of a mature obligation to the estate if the obligor has a right of setoff). Neither section 362 nor section 542 contains any language that would indicate an exception to the turnover obligation for secured creditors who have unilaterally determined that their interests are not adequately protected. Instead, as *Sharon* noted, the procedural framework established by the Code places the burden of moving for a determination of adequate protection or limitations on the debtor's use of estate property upon the secured creditor, not the debtor. *See In re Sharon*, 234 B.R. 676, 687 (6th Cir.

BAP 1999); *In re Metromedia Fiber Network, Inc.,* 290 B.R. 487, 493 (Bankr. S.D.N.Y.2003) (holding that secured creditor's failure to turn over collateral upon debtor's request, "necessitating commencement of [an] adversary proceeding, constituted an exercise of control over the debtor's property in violation of the automatic stay under Section 362(a)(3)"); *Nissan Motor Acceptance Corp. v. Baker,* 239 B.R. 484 (N.D.Tex.1999) ("Appellant's action is a violation of its obligation under § 542(a) to turnover estate property, and subverts the authority of the Bankruptcy Court as specified in § 363(e) to order adequate protection when the *Bankruptcy Court,* not the creditor, deems such protection necessary.").

Courts on both sides of the split cite the United States Supreme Court's decision in *In re Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), in support of their respective holdings. However, setting aside the fact that the issue before this Court was not actually before the Supreme Court in *Whiting Pools,* the holding and language of *Whiting Pools* favor the majority's interpretation of the interplay between section 542(a) and section 363. *Whiting Pools* stands for two propositions: 1) property repossessed prior to the filing of a bankruptcy petition becomes property of the bankruptcy estate; and 2) a debtor can seek turnover of that property if the creditor fails to turn it over, even if the creditor is the Internal Revenue Service. *See id.*

Some courts have read into *Whiting Pools* a requirement that the debtor-in-possession or trustee must provide the secured creditor with adequate protection before the creditor will have an affirmative obligation to turn over the property, but *Whiting Pools* does not address this issue. The Supreme Court itself framed the issue before it as whether section 542(a) "au-

thorized the Bankruptcy Court to subject the IRS to a turnover order with respect to the seized property." *Id.* at 199, 103 S.Ct. 2309. Whether the IRS violated the automatic stay by failing to release the seized property to the debtor-in-possession upon the demand of the debtor-in-possession was not an issue before the Court, and the Court was not asked to opine on whether the creditor's failure to turn over estate property was a violation of section 362(a)(3), which did not then contain the "exercise control" language, added to that section in 1984. *See In re Del Mission, Ltd.,* 98 F.3d 1147 (9th Cir.1996) ("The 'exercise control' clause of § 362(a)(3) was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984."). Although *Whiting Pools* does not answer the question at issue here, it does refer to the creditor's duty to look to the provisions of the Bankruptcy Code rather than exercising any kind of self-help. Thus, the language and tenor of the holding supports the majority position that secured creditors must return repossessed property, pending a determination by the bankruptcy court as to whether the creditor's interests are adequately protected.

■ The third argument advanced by the minority is that the failure to return the vehicle upon request in accordance with the creditor's duty under section 542(a) is not an "act" to exercise control over property. Arguably, as some courts note, the traditional definition of "act" does not include a failure to act, and, if Congress had intended to reach passive conduct, it could have simply used the words "retain possession" of property of the estate, rather than "exercise control." *Brown,* 210 B.R. at 883. As *Sharon* recognized, however, the addition of the language "to exercise control" in 1984 indicated an intent to prohibit the retention of property of the estate obtained pre-peti-

tion. *Sharon,* 234 B.R. at 682. In reaching this conclusion, the court considered the fact that the statute already prohibited acts to "obtain" property of the estate, and the additional language logically expanded the reach of the stay to include cases in which the creditor had obtained property pre-petition and failed to return it after the filing of the case. *Id.* (citing *In re Javens,* 107 F.3d 359, 368 (6th Cir.1997)).

In support of its holding that a creditor's refusal to turn over a vehicle is not an "act ... to exercise control" over property of the estate, the *Brown* court relies on the United States Supreme Court's reasoning in *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). *See Brown,* 210 B.R. at 884. Although *Brown* recognizes that the issue addressed in *Strumpf* is distinguishable from the issue at hand, *Brown* suggests that the Supreme Court's "statement that a *refusal* to act is not 'an act ... to exercise control' is consistent with" *Brown's* holding that the refusal to turn over a vehicle is not an "act." *See id.* But the issues considered in *Strumpf* and *Brown* are so distinguishable that the reasoning of *Strumpf* does not support *Brown's* holding.

In *Strumpf,* the bank refused to allow the debtor to reduce the bank account balance below the amount that the debtor owed the bank, but the bank did not actually perform a setoff against the debtor's balance. *Id.* at 17–18, 116 S.Ct. 286. The debtor moved for a finding of contempt against the bank, asserting that the freeze violated the automatic stay. *See id.* at 18, 116 S.Ct. 286. The Court concluded that the freeze itself was not a setoff, and, therefore, did not violate section 362(a)(7). *See id.* at 19, 116 S.Ct. 286. Additionally, the Court found that the freeze was not a violation of section 362(a)(3) or 362(a)(6) because the bank was never in possession

of property of the estate and did not exercise control over property of the estate. *See id.* at 21, 116 S.Ct. 286. The Court noted that the bank account did not represent "money belonging to the depositor," but was rather a "promise to pay, from the bank to the depositor," and therefore, the bank's freeze was merely a refusal to perform a promise. *Id.* Notably, the Court stated that the debtor's "view of things might be arguable" if the bank account did consist of the debtor's funds that could be considered property of the estate. *Id.* Finally, the Court refused to interpret the automatic stay as requiring the bank to turn over funds, when section 542(b) specifically excused the bank from doing so. *See id.*

*Strumpf,* thus involved a key distinction: The bank was not holding property of the bankruptcy estate, but owed a promise to pay the debtor funds upon demand. Although section 542(b) provides that an obligor owing a debt to the estate shall pay that debt upon demand, it expressly excuses such performance if the obligor has a right of setoff. Therefore, unlike the creditor in this case, the bank in *Strumpf* did not hold property of the estate and had no automatic duty to perform. Here, the creditor holds property of the estate and has an affirmative duty to turn it over to the debtor under section 542(a). Unlike the bank's duty under section 542(b), which was excused because the bank possessed a right of setoff, a creditor's duty under section 542(a) has no exception based on the creditor's right to adequate protection.

Further, the justifications for allowing a bank to temporarily freeze a debtor's checking account are not present when considering whether a creditor should be permitted to retain a vehicle. The creditor's security interest in a vehicle is not extinguished automatically if the creditor

returns the vehicle to the debtor. The creditor will retain a valid, perfected lien on the vehicle that will be recognized, and the creditor's claim will be entitled to payment as a secured debt through the debtor's Chapter 13 plan.

The better view, therefore, is that, because section 542(a) imposes an affirmative duty to return estate property, the creditor's unilateral refusal to comply with that duty constitutes an "act" within the meaning of section 362(a)(3). The Court's conclusion in this regard is supported by cases that have held that a creditor's failure to act can constitute a violation of the automatic stay. For instance, in *In re Hampton*, the court held that a creditor's failure to provide a debtor with a code that would enable the debtor to operate the debtor's vehicle was an act to exercise control over property of the estate and a violation of the automatic stay. *See In re Hampton*, 319 B.R. 163, 171 (Bankr.E.D.Ark.2005). In that case, the creditor took no act, but, nonetheless, the court determined that the creditor's failure to act (*i.e.*, to maintain a system through which the debtor could obtain a valid code every month to operate her vehicle) was an impermissible interference with the debtor's right to use estate property. *See id.* Similarly, several courts, including this Court, have held that an institution's failure to release transcripts to a student-debtor is an "act to collect, assess, or recover" a debt against the student in violation of section 362(a)(6). *See In re Merchant*, 958 F.2d 738 (6th Cir.1992); *In re Hernandez*, 2005 WL 1000059 (Bankr.S.D.Tex. Apr.27, 2005); *In re Reese*, 38 B.R. 681 (Bankr.N.D.Ga.1984). *But see In re Billingsley*, 276 B.R. 48 (Bankr.D.N.J.2002) (failure to release transcript is not an act, but merely maintains the *status quo*).

In each of these situations, the creditor has been found to have violated the automatic stay, notwithstanding the creditor's failure to act. As the *Hampton* case demonstrates, a creditor can negatively impact a debtor's efforts to reorganize and thwart the purpose of the automatic stay by merely sitting back and failing to act when the Code imposes upon it an obligation to do so. To interpret the word "act" within section 362(a) to require an affirmative action on the creditor's part would rob the automatic stay of its effectiveness.

The final argument the minority advances is that a creditor's failure to return a vehicle until adequate protection has been provided is merely the preservation of the *status quo* that does not violate the automatic stay. *See In re Brown*, 210 B.R. at 884; *In re Spears*, 223 B.R. 159, 166 (Bankr.N.D.Ill.1998) (noting that the purpose of the automatic stay is to preserve the *status quo* at the time of the commencement of the bankruptcy case). In support of this conclusion, the *Spears* court noted that "[t]he obvious rationale implicit in permitting the secured creditor to retain possession of the seized property while opposing turnover under § 542(a) is that the creditor may suffer the very harm that adequate protection is designed to avoid if the property is turned over to the [debtor] before the [debtor] proves that the creditor is being given the adequate protection to which it is entitled." *Id.* at 167.

Permitting the creditor to hold the property until the bankruptcy court has passed on the issue of adequate protection has logical appeal. Presumably, under such a rule, the creditor would not risk having to repossess the vehicle a second time because the debtor cannot provide adequate protection or suffer further depreciation in the vehicle's value while it is in the debtor's hands. But a rule that places the burden of going forward on the debtor could jeopardize the debtor's reorganization if the vehicle is the debtor's only

source of transportation. Under such circumstances, the estate will not benefit from the automatic turnover provision, the purpose of which is to gather all estate property to allow all creditors to benefit from its liquidation or use.[3]

Requiring a secured creditor to turn over a vehicle without a prior determination as to adequate protection concededly imposes risks and burdens on the secured creditor. But that is where the language and purposes of the relevant statutory provisions place-them. In particular, the very purpose of the automatic stay is subverted if a creditor is allowed to insist that a debtor take affirmative action to recover the vehicle.

Moreover, a secured creditor can eliminate or minimize its risks and burdens by working with the debtor to resolve the issue or immediately invoking various provisions of the Bankruptcy Code that protect its rights. For example, the creditor can seek an expedited hearing on its motion for relief or, if the creditor truly believes that it will suffer irreparable harm from turning over the vehicle, the creditor is entitled to move for relief from the stay on an *ex parte* basis. *See id.*; 11 U.S.C. § 362(f); FED. R. BANKR. P. 4001(a)(2); BLR 4001–2; *Mitchell v. BankIllinois*, 316 B.R. 891, 900–01 (S.D.Tex.2004) (creditor can seek expedited, *ex parte* relief from stay if its interest would be irreparably

harmed; creditor violated the stay by waiting two weeks after the debtor demanded the return of her vehicle to file a motion for relief). Further, requiring the creditor to file the motion for relief may not turn out to be an additional burden on the creditor, as the creditor may inevitably be required to file a motion for relief in order to dispose of the vehicle.

For all of the forgoing reasons, the Court adopts the majority position as illustrated by *In re Sharon*, 234 B.R. 676 (6th Cir. BAP 1999). The creditor cannot make a unilateral decision as to whether the debtor can provide adequate protection but must initiate action to bring the matter before the bankruptcy court. To do otherwise and force the debtor to file a complaint for turnover violates section 362(a)(3).

## B. *Damages for Willful Violation of the Automatic Stay*

In this case, the Debtor notified the Defendant of the filing of the bankruptcy case, requested the turnover of the Vehicle, disclosed the Debtor's intent to pay the Defendant's claim through a proposed Chapter 13 plan with interest, and attempted to provide the Defendant with proof of insurance.[4] The Defendant refused to turn over the Vehicle and did not file a motion for relief from the stay or a request for determination of adequate pro-

---

3. At least one court has held that simply showing the secured creditor a proposed plan that provides for payment of the creditor's secured claim is an insufficient tender of adequate protection because the debtor's plan has not been confirmed and may not be feasible. *See In re Coleman*, 229 B.R. 428 (Bankr. N.D.Ill.1999). This Court respectfully suggests that making the debtor wait to recover the vehicle until after the bankruptcy court can opine on the feasibility of the plan may likely result in the failure of the debtor's reorganization. The Court should not condition the return of the debtor's means of transportation upon confirmation of the debtor's plan, which generally will not occur for approxi-

mately two months after the filing of the petition. In the meantime, the debtor may have no transportation to work, may lose employment, and may not be able to fund the plan. Such a scenario would not lend itself to protecting the debtor's other creditors, which is also an intended and important function of the automatic stay.

4. In its brief, the Defendant states that the Debtor's demand for turnover was deficient because the Debtor did not present the Defendant with a copy of the proposed plan or the actual proof of insurance. However, the Debtor did file a proposed plan that provided for payment of the Defendant's claim on De-

tection. By refusing to comply with its duty to turn over property of the estate, the Defendant exercised control over the Vehicle in violation of section 362(a)(3).

 Pursuant to section 362(h), a party injured by a willful stay violation "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). A "willful" violation occurs when the creditor knew that the automatic stay had been invoked and intended the action that violated the stay. *See Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996). Punitive damages are appropriate only when the creditor has acted maliciously or in bad faith. *See In re Esposito*, 154 B.R. 1011 (Bankr.N.D.Ga.1993) (Murphy, J.).

 Here, the Debtor was injured by the Defendant's refusal to return the Vehicle in that the Debtor was deprived of the use of the Vehicle and was forced to resort to legal action to recover the property. The Court cannot assess actual damages because the Debtor submitted no evidence to establish the existence or extent of any actual damages suffered. At a minimum, the Debtor incurred attorney's fees for the filing of the complaint for turnover, which would not have been necessary had the Defendant turned over the Vehicle. Although the Court has no evidence before it as to the amount of the fees, the Court will permit the Debtor an opportunity to file an affidavit as to the amount of attorney's fees incurred in the filing of the complaint for turnover. Final-

ly, an award of punitive damages would not be appropriate in this case. As noted above, this Court has historically held that a creditor may retain a vehicle repossessed pre-petition so long as the creditor does not dispose of the vehicle. This fact, along with the significant weight of the minority cases supporting the conclusion that such conduct is not a violation of the automatic stay, persuades the Court that the Defendant did not act maliciously or in bad faith, but instead under a good faith belief that it was entitled to retain the Vehicle until the Court ordered turnover.

## CONCLUSION

For the reasons stated above, the Debtor's Motion for Sanctions for Willful Violation of the Automatic Stay is **GRANTED**.

**IT IS FURTHER ORDERED** that the Debtor shall have fifteen (15) days from the date of the entry of this Order to file with the Court and serve upon the Defendant an affidavit detailing the nature of legal services rendered in connection with the Debtor's Complaint for Turnover and the amount of such fees charged to the Debtor. The Defendant shall have fifteen (15) days from the date of service of the affidavit upon the Defendant to file an objection to the fee requested. If such an objection is not filed within that time, the Court will enter judgment for the fee against the Defendant without further notice or hearing.

**IT IS SO ORDERED.**

cember 23, 2004. The facts, as admitted by the Defendant, suggest that the Defendant had no intent of turning over the Vehicle, regardless of whether the Defendant had been presented with a paper copy of the proposed plan and the proof of insurance, which the Debtor apparently intended to attach to the fax sent on December 26, 2004. Accordingly,

the Court does not find that the Debtor's failure to present these documents justifies a finding that the Debtor's request for turnover was not valid. The fact remains that the Defendant refused to turn over the Vehicle and did not file a motion for relief from the stay so as to bring the issue to the Court's attention.